Kelly, Appellant, *v.* Crawford.

Argued April 26, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Joseph D. Ripp*, with him *H. P. Eberharter*, for appellant.

*Sanford M. Chilcote*, with him *Dickie, Robinson & McCamey*, for appellee.

OPINION BY CUNNINGHAM, J., September 29, 1939:

This appeal is by the plaintiff from a judgment upon a verdict for the defendant in a negligence case.

The suit was brought to recover damages for personal injuries suffered by plaintiff when a Chrysler Sedan, driven by defendant, overtook and ran into the left rear portion of a tractor street sweeper plaintiff was operating in the right hand lane of the southbound tube of the Liberty Tubes in the City of Pittsburgh. At the time of the accident both vehicles were proceeding in the same direction.

Although the assignments relate solely to alleged

errors in the charge and the refusal of a new trial, a brief review of the testimony is essential to an understanding of the questions here involved.

The accident happened about 6 o'clock a. m. on the morning of January 7, 1938. The southbound tube, designed to carry two lanes of traffic moving in the same direction, extends from Pittsburgh towards Dormont; it is twenty-one feet wide, with a white line dividing the parallel traffic lanes.

Plaintiff testified he was operating the sweeper southwardly in the right lane and going with traffic. The tractor sweeper nine feet wide and bearing "Tractor License No. 2892," was owned by the County of Allegheny. It was a "tractor type vehicle," steered from the rear, and equipped with six electric lights on the front and five red lights and two red reflectors in the rear. According to plaintiff, all the lights on the sweeper were burning at the time of the collision; in addition, the tube lights were operating and there was no fog in the tube.

When plaintiff was about halfway through the tube, operating the sweeper at about six miles per hour, the car driven by defendant approached from the rear in the same lane of travel and at a speed of from thirty to thirty-five miles per hour. Its right front struck the left rear of the sweeper, throwing plaintiff off the driver's seat and causing injuries to his leg, back and neck.

Defendant and his witnesses did not controvert the essential facts as to the manner in which the accident occurred. He testified, however, and was corroborated by motorists passing upon the left-hand lane, that there were no lights on the sweeper; that the atmosphere in the tube was heavy, misty and foggy; and that the artificial lighting provided by the county was extremely poor.

This conflicting testimony raised issues of fact, as to defendant's negligence and plaintiff's alleged con-

200

tributory negligence, which it became the duty of the trial judge to submit to the jury under proper instructions relative to the law applicable thereto.

Appellant's assignments are based upon two consecutive portions of the charge; the first reads: "Now under the automobile laws we have other things; we have a law in the State of Pennsylvania which says that anybody who uses a headlight should use such a light under the circumstances that would throw a beam of light one hundred feet, so he could see ahead one hundred feet. Then we have another law which pertains to rear lights, that they should show a light that you could see for five hundred feet."

Section 801 of Article VIII of the Motor Vehicle Code of May 1, 1929, P. L. 905, as variously amended, including the amendment of June 29, 1937, P. L. 2329, (75 PS §351) provides in paragraph (d): "Every motor vehicle, and every trailer or semi-trailer attached to a motor vehicle, and every vehicle which is being drawn at the end of a combination of vehicles, shall carry at the rear a lamp of a type which at the time of its use is approved by the secretary, and which exhibits a red light, plainly visible *under normal atmospheric conditions* from a distance of five hundred (500) feet to the rear of such vehicle......" (Italics supplied).

Appellant complains, and we think justly, that the positive instruction that the law required him to have a rear light upon the sweeper that could be seen from a distance of five hundred feet, without, in immediate connection therewith, giving him the benefit of the qualifying statutory phrase, "under normal atmospheric conditions," placed an unwarranted and unduly heavy burden upon him and had a strong tendency to mislead the jury upon the question of appellant's asserted contributory negligence. The attention of the jury was not even directed to the fact that the evidence with relation to the atmospheric conditions previaling at the time of the accident was conflicting.

We need not decide whether the above instruction, covered by the first assignment, would, in the absence of a specific exception to it, constitute such basic and fundamental error as to require a new trial if it stood alone. That statement was followed by instructions which were even more prejudicial to appellant upon the question of his alleged contributory negligence. The trial judge proceeded: "And if the *light* is out of order or anything else, just as Mr. Chilcote (attorney for defendant) has told you, they must go out on the highway and put on a flare; that is for the protection of the people using the highway, who are following, that is either trucks or automobiles. Now if you find that this plaintiff was using due care in operating his sweeper, and *he did everything under the automobile law,* under the road law, then you will come to the other proposition, whether or not the defendant was guilty of negligence." (Italics supplied)

Section 824 of the above cited Article of the Vehicle Code, 75 PS §432, deals with the types of vehicles required to carry red flares and prescribes the circumstances under which they shall be used. It provides in part as follows: "(a) Every motor bus and every motor omnibus for the carriage of passengers for hire, except taxicabs, and every commercial vehicle, or combination of vehicles, having a gross weight of eleven thousand (11,000) pounds, or more, and every trailer, or semitrailer designed for the living quarters or carriage of persons, shall be equipped with at least three (3) red flags, of dimensions not less than twelve by twelve (12 x 12) inches, and a sufficient number of flares, not less than three (3), or electric lanterns, electric flashing signals, or other signals capable of continuously producing three warning lights, each visible from a distance of at least five hundred (500) feet for a period of at least eight (8) hours.......(b) Whenever any such *vehicle* and its *lighting equipment* are *disabled,* during the period when lighted lamps must be displayed

on vehicles, and such vehicle cannot immediately be removed from the main traveled portion of a highway outside of a business or residence district, or if the *lighting equipment* on any such vehicle is not disabled but, due to its position upon the highway or by reason of contours or curves in such highway, it may constitute a menace to other vehicular traffic, the operator or other person in charge of such vehicle shall cause such flares, lanterns, flashing signals, or other signals to be lighted and placed upon the highway: One (1) at a distance of approximately one hundred (100) feet in advance of such vehicle, one (1) at a distance of approximately one hundred (100) feet to the rear of the vehicle, and the third upon the highway side of the vehicle, except that, if the vehicle is transporting flammables, such vehicle shall be equipped with a sufficient number of electric flares or electric flashing signals, not less than three (3)......" (Italics supplied)

Assuming for present purposes, but not deciding, that the sweeper was within the above quoted statutory provisions, there was no basis in the evidence justifying any reference whatever by the trial judge to the "placing" of "flares." The provisions of the section are perfectly clear. If we assume the strongest possible view against appellant, viz., that the tube was the kind of a highway described in the section and that the accident occurred "during the period when lighted lamps must be displayed," the legislative requirement is that at least three "flares, lanterns, flashing signals, or other signals" be lighted and placed upon the highway at the prescribed locations in two, and only two, sets of circumstances. The first combination of circumstances is whenever both the "vehicle and its lighting equipment are disabled," and the second is when the "lighting equipment......is not disabled," but the vehicle is, and, "due to its position upon the highway or by reason of contours or curves in such highway," may constitute a menace to traffic notwithstanding the fact that the

lights attached to it are burning. A vehicle, so disabled that it is standing still upon the "main traveled portion of a highway" and "cannot immediately be removed" therefrom, is an absolutely essential element in both situations. It would be an obvious impossibility to place flares, at the distances and in the manner prescribed by the statute, in front of, behind, and at the side of a moving vehicle.

The theory upon which counsel for the appellee undertake to support the judgment is thus expressed in their brief (p. 14): "Furthermore, there was evidence that there were no lights on [the sweeper], and if the jury believed this, it certainly constituted a menace. There was also evidence from which the jury could infer that it was stopped. *Either* of these facts, if so found by the jury, would have required the use of flares." (Italics supplied)

This statement is neither good law nor in accordance with the testimony. The assertion that *either* the *absence* of *lights* on the sweeper, *or* the fact it had *stopped,* would require the placing of flares is a manifest misconstruction of the statute. For the reason above indicated, it is absurd to argue that the driver of a moving vehicle of the type specified, the "lighting equipment" of which has become "disabled," is required, so long as the vehicle is proceeding, to perform the impossible task of placing flares. The basic requirement for flares is a disabled vehicle, included within the section; if its lighting equipment is also disabled, the requirement is absolute; if its lighting equipment is not disabled, the requirement depends upon the position of the vehicle upon the highway.

Our examination of the record has failed to disclose any evidence from which a jury could be permitted to "infer that the sweeper was stopped" at the time of the collision. There was testimony for the appellee from which a jury could find its lighting equipment was disabled or had not been switched on. But upon the

question whether the vehicle itself was in active operation or disabled and at rest, all the testimony is that it was in motion.

Appellant said (9a), "The sweeping speed is six miles an hour, that is what it was going [south] when I was struck." Appellee testified (106a), "It was sweeping. It was dusty and it was sweeping that up." When under cross-examination, he was asked the direct question whether the sweeper was in motion and replied, "I wouldn't know that. It runs so slow I couldn't tell." Cox, a witness for appellee said (121a), "I know the brushes were working. Whether the vehicle was moving ahead or backing up I don't know." Church, another witness called by appellee said (128a), "The brooms was working; I could see it was a sweeper." We are not overlooking the proposition that even if both the sweeper and its lighting equipment had been disabled, it might still be a serious question, under the evidence relative to the artificial lighting in the tube, whether any reference to flares would have been justifiable. Cf. *Handfinger et al. v. Barnwell Brothers, Inc.*, 325 Pa. 319, 189 A. 312. But as appellee has the verdict we are giving him the benefit of every possible inference favorable to him, and prefer to turn the case upon the definitely established fact that the sweeper was in motion when he ran into it.

We think it clear that the trial judge in the portion of his charge covered by the second assignment imposed upon appellant a duty not merely in excess of the requirement of the statute, but, under all the evidence, a duty which, in fact, was impossible of performance.

A charge containing an instruction that it was the duty of one of the parties to comply with a provision of the Motor Vehicle Code which has no application to the evidence upon either side of the case is basically and fundamentally erroneous and prejudicial: *Steckler v. Luty et al.*, 316 Pa. 440, 175 A. 481; see also *Delling et ux. v. McKnight*, 325 Pa. 251, 188 A. 859.

As it is impossible to know the extent to which the erroneous instruction influenced the jury, a new trial must be granted (*Logan, to use, v. Bethlehem City*, 324 Pa. 7, 187 A. 389), although only a general exception was taken by counsel for appellant: *DiPetro, Guardian, et al. v. G. A. & P. T. Co.*, 315 Pa. 209, 173 A. 165; *Patterson v. Pittsburgh Railways Company*, 322 Pa. 125, 185 A. 283; *Finkelstein et ux. v. McClain*, 331 Pa. 198, 200 A. 596; *Gower v. Harakal et ux.*, 131 Pa. Superior Ct. 185, 188, 198 A. 923.

The second and third assignments must be sustained. Judgment reversed with a venire.