725 A.2d 1195

**Brenda L. BENNETT and Robert E. Bennett, Appellants,**

v.

**Kimberly Ann SAKEL, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 1998.

Decided Feb. 24, 1999.

Matthew A. Hartley, Louis M. Tarasi, Jr., Pittsburgh, for Brenda and Robert Bennett.

Stephen P. McCloskey, Washington, for Kimberly Ann Sakel.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CASTILLE, Justice.

The issue before this Court is whether counsel, during closing argument, may properly encourage the jury to draw adverse inferences concerning witnesses not called by the opposing party, where the witnesses were equally available to both parties.

On June 6, 1992, appellant, Brenda Bennett, and appellee, Kimberly Sakel, were involved in a two-vehicle accident near Waynesburg, Pennsylvania. Bennett experienced neck and back pain after the accident and sought treatment from a chiropractor and several physicians.

Bennett and her husband, appellant Robert Bennett, filed a complaint against Sakel in the Court of Common Pleas of Green County. The matter proceeded to a trial before a jury. During closing argument, counsel for Sakel suggested that the jury should draw negative inferences from the Bennetts' failure to call the police officer who investigated the collision and

two physicians who had treated Brenda Bennett. The relevant portion of counsel's closing argument is as follows:

> Now, I wonder, and this is for you to decide. I wonder why Mr. and Mrs. Bennett did not call the trooper in their case....
>
> She [Brenda Bennett] saw Dr. Sterns on one occasion. I wonder why Dr. Sterns wasn't here to talk to you? I wonder why there wasn't any follow-up appointment made by Mr. and Mrs. Bennett's lawyer. After Dr. Sterns, Mrs. Bennett is referred to Dr. Negri, an acupuncturist. And according to the records and cross-examination of Mrs. Bennett, the pain levels decreased in those three visits. Three visits from August 3 to August 11, 1992. I wonder why Dr. Negri wasn't here to talk to you, especially when his records indicated that there wasn't to be any return office visit. Those are questions that you, when you go back to the jury deliberation room, will ask yourselves why. Mr. and Mrs. Bennett have promised to you to bring the information here, to bring the evidence here for you to consider. And you wonder, where are they?

N.T. Trial, pp. 370–373.

The Bennetts' attorney moved for a mistrial or, in the alternative, a curative instruction. The trial court denied the motion for a mistrial and request for a curative instruction. The jury found that Bennett and Sakel were each fifty percent negligent in causing the accident. The jury returned a verdict in favor of the Bennetts for $250 for past pain and suffering.[1] The Bennetts appealed to the Superior Court, which affirmed. This Court granted allocatur in order to determine whether it was proper for defense counsel to ask the jury to draw adverse inferences during closing argument concerning the plaintiffs' failure to call witnesses who were equally available to both parties.

In *Bentivoglio v. Ralston*, 447 Pa. 24, 288 A.2d 745 (1972), this Court held that an opposing party is not entitled to have

---

1. The jury did not return an award for Robert Bennett on his loss of consortium claim.

the jury instructed that it may draw an adverse inference when a litigant fails to call a witness who presumably would support his allegation, when the witness is equally available to both parties. In *Bentivoglio,* the plaintiff was involved in an automobile accident with the defendant. The plaintiff sought treatment from several doctors for his injuries, but presented only a select few of them as witnesses at trial. The trial judge directed the jury that it could draw the inference that, because the plaintiff had failed to call the doctors to testify, their testimony would have been unfavorable to the plaintiff. This Court found that the instruction was in error, stating that: " . . . [T]he inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties." *Id.* at 24, 288 A.2d at 748.[2]

Here, the Superior Court rejected *Bentivoglio* and instead relied on *Augustine by Augustine v. Delgado,* 332 Pa.Super. 194, 481 A.2d 319 (1984). In *Augustine,* the Superior Court held that it was proper for defense counsel to draw an adverse inference from the plaintiffs' failure to call two pediatric neurologists who had been involved in the diagnosis and care of the plaintiffs' infants. However, the court in *Augustine* neither inquired into nor placed any significance on whether the physicians were peculiarly within the reach or control of the plaintiffs. Rather, the court focused on whether counsel's closing argument was appropriate. Here, the Superior Court found that the matter *sub judice* was more akin to *Augustine* than *Bentivoglio* because *Augustine,* like the instant matter, involved a challenge to counsel's closing arguments, not an adverse instruction. We find the Superior Court's interpretation of *Bentivoglio* too limiting. We further reject the reasoning of *Augustine* to the extent that it contradicts this Court's holding in *Bentivoglio.*

*Bentivoglio* is clear that it is the *inference itself* that is prohibited, whether it comes from opposing counsel or the

2. This Court further found that *Bentivoglio* was not a case where the uncalled witnesses were peculiarly within the reach of the plaintiff. The defendant had taken pretrial depositions which proved that he had knowledge of the physicians' treatment of the plaintiff.

court in its instructions. *See also Commonwealth v. Newmiller*, 487 Pa. 410, 409 A.2d 834 (1979) (trial counsel was ineffective for failing to object to court's charge; because there was no evidence that uncalled witness was particularly within the reach of either party, the court should, as a matter of law, have instructed the jury to disregard counsels' arguments and not apply the missing witness rule).

Here, Sakel's counsel made reference during closing argument to the Bennetts' failure to call the police officer who investigated the accident as well as two physicians who treated Brenda Bennett. However, these three potential witnesses were not peculiarly within the reach of the Bennetts.[3] Thus, the Superior Court erred by not applying *Bentivoglio* to this matter.

To allow the Superior Court's holding to stand in this case would have the undesirable effect of creating a paradoxical situation where an attorney would be allowed to suggest that the jury draw adverse inferences during closing arguments about his opponent's failure to call certain witnesses when, based on the same facts, the trial court would be prohibited by *Bentivoglio* from giving an adverse inference instruction. We therefore hold that an attorney may not ask the jury to draw an adverse inference concerning the opposing party's failure to call a witness where that witness was equally available to both sides.

The decision of the Superior Court is reversed and this matter is remanded.

---

**3.** Brenda Bennet gave a deposition in which she described the care given to her by Dr. Sterns and Dr. Negri. Further, Sakel's counsel called the police officer to testify.