Mary Ann KOVACH and Francis
D. Kovach, h/w, Appellees,

v.

Michael SOLOMON, Appellant.

Superior Court of Pennsylvania.

Argued March 2, 1999.
Filed May 6, 1999.
Reargument Denied July 13, 1999.

CIRILLO, President Judge Emeritus:

¶ 1 Michael Solomon (Solomon) appeals from the order of the Court of Common Pleas of Northampton County granting a new trial following a jury's verdict that his negligence was not a substantial factor in causing the injuries of Mary Ann Kovach (Kovach) or in causing any derivative injuries to her husband. We reverse the order for a new trial and reinstate the original jury verdict.

¶ 2 Kovach's car was struck by Solomon from behind in 1994, and she allegedly suffered injuries as a result. Kovach therefore commenced this action. At trial it was revealed that she had also been involved in a similar accident in 1990 in which she had sustained similar injuries, and that she had been under treatment for her 1990 injuries immediately before her 1994 accident with Solomon. Kovach failed to call her primary treating physician, a chiropractor, at trial, although she listed him in her pre-trial witness list. His records, however, were obtained by the defense and were used quite effectively to impeach Kovach's direct testimony regarding the extent of her treatment prior to her accident with Solomon.

¶ 3 During its charge to the jury, the trial court instructed the jury that they could, if they wished, infer that the absence at trial of Kovach's primary treating doctor meant that his testimony would

have been unfavorable to Kovach. It gave this "missing witness" instruction to the jury because it found that a local rule of civil procedure, regarding reliance on the pre-trial witness list, had been violated. The jury returned a defense verdict.

¶ 4 At a later hearing on Kovach's post-verdict motions, the trial court found that it had abused its own discretion by giving the "missing witness" instruction. The court had not at trial originally made an inquiry into what prejudice Solomon had suffered through Kovach's violation of the rule. At the post-verdict motion hearing, however, the court focused on this point. Although Solomon did state that he had been prejudiced by being unable to offer into evidence the doctor's professional diagnoses and opinions regarding which injuries had been caused by which accident, the court found that Solomon had not shown sufficient prejudice because he had been able to use the doctor's records to cross-examine Kovach. Because of the absence of prejudice, the court found, the local rule violation had not been severe enough to warrant the "missing witness" instruction it had given as a sanction within its discretion. Having found that it had committed reversible error, the court therefore granted a new trial. This appeal followed.

¶ 5 The local rule of civil procedure in question states:

At trial the parties will be limited to those witnesses, exhibits and document divulged at pre-trial, unless opposing counsel waives such restrictions or the Court finds such limitations to be manifestly unjust. **If a party has indicated that he will call a specific witness, he will be expected to produce that witness at trial unless he has given to opposing counsel at least seven (7) days['] notice prior to trial that he does not intend to call such witness. Failure to give such notice shall subject a party to such penalty or sanction as the Court in its discretion may impose.**

Northampton County Local Rule N212B(c)(5) (emphasis added).

¶ 6 On appeal from this order of the trial court, Solomon presents for our consideration the following issue:

Whether the court below abused its discretion in granting a new trial on the ground that it gave a negative inference instruction with respect to a listed witness whom the plaintiffs failed to call without giving seven days' notice in violation of a local rule.

¶ 7 When reviewing an order granting a new trial, a matter within the discretion of the trial court, we are called upon initially to determine whether the trial court would have ordered a new trial for any other reason but the one cited. *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 448, 625 A.2d 1181, 1184–85 (1993). If the trial court would have granted a new trial for reasons other than those it cited, a broad scope of review applies. In that situation, we examine the entire record, and, using an abuse of discretion standard, we must affirm if there is any valid reason in the record for granting a new trial. *Id.*

¶ 8 However, where, as here, it is apparent that the reason given by the trial court is the only basis upon which it ordered a new trial, a narrower scope of review applies. *Id.* at 449, 625 A.2d at 1185. In such a case, using an abuse of discretion standard, we examine only the stated reason the trial court ordered the new trial. *Id.* "Thus, if the trial court specifies the reasons for which it ordered a new trial, then an appellate court can only affirm the decision if at least one of the reasons specified is an adequate one." *Id.* at 452, 625 A.2d at 1187.

¶ 9 Here, the trial court has given one basis upon which it ordered a new trial. "As a practical matter, a trial court's reference to a finite set of reasons is generally treated as conclusive proof that it would not have ordered a new trial

on any other basis." *Id.* at 447, 625 A.2d at 1184. We treat it as such.

¶ 10 However:

Even when an appellate court must confine its examination to the merit of any reasons offered by the trial court, circumstances may still demand a review of the entire record. However, the purpose for doing so is not to locate a valid reason for affirming the order. The inquiry is strictly directed at determining whether the trial court's stated reasons and factual basis can be supported.

*Coker* at 452, 625 A.2d at 1187.

¶ 11 The circumstances of this case demand a review of such a scope. Error in a jury charge may provide the basis for a new trial if it is shown that the instruction may have been responsible for the verdict. *O'Brien v. Martin*, 432 Pa.Super. 323, 638 A.2d 247 (1994); *Sedlitsky v. Pareso*, 425 Pa.Super. 327, 625 A.2d 71, 74 (1993); *Smith v. Brooks*, 394 Pa.Super. 327, 575 A.2d 926 (1990). A charge to the jury which is not warranted by the evidence is ground for a new trial. *Sweitzer v. Dempster Systems, Division of Carrier Corp*, 372 Pa.Super. 449, 539 A.2d 880 (1988); *Kelly v. Crawford*, 137 Pa.Super. 197, 8 A.2d 449 (1939).

¶ 12 We must, therefore, determine from the evidence whether the instruction was warranted in the first place, as well as whether the court's later grant of a new trial was warranted, together with its grounds for so ordering (i.e., lack of prejudice). In order to examine whether there was prejudice to Solomon in the violation of the local rule, whether prejudice is an appropriate pre-requisite for so charging the jury, how the local rule affects the general application of the "missing wit-

ness" rule, and whether the "missing witness" instruction was given in error, we must examine the facts of this case in detail.

¶ 13 Our standard is clear. We review them for an error of law or abuse of discretion; that is, to determine whether the trial court's decision has merit. *Coker, supra* at 447, 625 A.2d at 1183. As our supreme court has instructed us:

Discretion is abused when the course pursued represents not merely an error of judgement, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*P.L.E. New Trial* § 2. One way of summing up all the qualities described in this definition of a valid exercise of discretionary power is to say that **the decision had merit.** Conversely, if the reason for performing a discretionary act **had no merit,** then the trial court abused its discretion. Thus, when viewed in terms of the degree of scrutiny that should be applied, **an inquiry into an abuse of discretion is operationally equivalent as one into the merit of the trial court's decision.**

*Id.* at 447–48, 625 A.2d at 1185 (precise usage and spelling in original) (emphasis added).

¶ 14 The pertinent evidence reveals the following. Well before trial, the attorneys for both sides in this case exchanged the usual pre-trial list of expert witnesses they expected to call to the stand.[1] Kovach's list included Dr. Ross Lyons, a chiropractor and Kovach's primary treating physician for the injuries at issue in this case.[2]

---

1. *See* Pa.R.C.P. 212.1 (pre-trial statement in jury cases must be filed by plaintiff 60 days before trial); Pa.R.C.P. 212.2 (pre-trial statement shall contain list of names and addresses of all possible witnesses, copies of expert witness reports showing basis for expert opinion; trial judge shall grant appropriate relief for violation of rule); Pa.R.C.P. 4003.5 (dis-

covery of expert fact and opinion testimony via written interrogatories), 42 Pa.C.S.

2. We use the title "Doctor" because it was used throughout trial and pleading; however, as Lyons was not a testifying witness, his professional degree was not placed on the

In the usual course of discovery, counsel for Solomon obtained the records of Dr. Lyons.

¶ 15 As of seven days before trial, Solomon's attorney had not received word that Kovach would not be calling any of her listed witnesses. Being aware of the local rule, she believed that Kovach would call Dr. Lyons to testify. She prepared for trial accordingly, using Dr. Lyons' records she had obtained through discovery.

¶ 16 Four days before trial, in a telephone conversation regarding other details, Solomon's attorney asked Kovach's attorney whether he would be calling Dr. Lyons to testify. "I don't think so," said Kovach's attorney, but he explained his uncertainty was because it had just been determined that a different attorney from the same firm would be trying the case. Kovach's attorney stated that it was up to new counsel whether Dr. Lyons would be called or not. On the first day of trial, Solomon's attorney inquired again, this time of Kovach's new attorney (hereinafter "Kovach's attorney"), whether Kovach would be calling Dr. Lyons to testify. Kovach's attorney replied that Kovach would not be calling Dr. Lyons.[3]

¶ 17 Trial commenced with a stipulation that Solomon's car hit Mary Ann Kovach's in 1994, that Solomon was negligent, and that Kovach was not contributorily negligent. The only issues for the jury to consider were causation and damages. Solomon, briefly called by Kovach, admitted he did not remember anything about the accident. The videotaped testimony of an orthopedic surgeon retained by Kovach was then played for the jury; he opined that the 1994 accident caused Kovach's disc herniation, radiating nerve root irritation, and aggravation of her degenerative disc disease.

¶ 18 Kovach then took the stand and stated that while driving on March 16, 1994, she had stopped to make a left turn when a car driven by Michael Solomon struck the rear of her car. She said she received extensive back injuries in this accident. She had also been in a car accident in 1990 that had caused her primarily neck injuries, from which she had largely recovered at the time of the 1994 accident, although she was still experiencing some pain from it then. In 1983, her left elbow had been injured, but she had also recovered from this accident by 1994.

¶ 19 As to her medical treatment, Kovach stated that after her earlier, 1990 accident, she had seen several medical specialists but had found no relief until she began treatments with Dr. Ross Lyons, a chiropractor, in 1993. She testified that she was treated by him approximately three times per week at first, and that the frequency of treatment tapered off gradually until, by the time of the 1994 accident, it was down to approximately once a month. Kovach continued seeing Dr. Lyons after the 1994 accident. At the time of trial, she was still being treated by him every other week and was on a daily exercise and stretching regimen under his supervision. Kovach saw no other specialist for her 1994 injuries until she hired her attorney[4] two years later. He directed her to see the orthopedic surgeon whose videotaped testimony had just been played. As a surgeon, however, this doctor could not guarantee the outcome of the operation he proposed. Therefore, Kovach stated, she stopped seeing him after approximately six months, but continued treatments with Dr. Lyons.

¶ 20 On cross-examination, Kovach stated that Dr. Lyons was her treating

record. We are therefore unaware whether the title is, strictly speaking, the correct one.

**3.** This attorney later admitted that Kovach's first, pre-trial attorney from the same firm had been unaware of Northampton County Local Rule N212B(c)(5).

**4.** Her pre-trial attorney; her trial attorney, though from the same firm, was a different person. *See* discussion *supra.*

physician for the 1994 accident, not the orthopedic surgeon. Solomon's attorney astutely used Dr. Lyons' and other medical records to impeach many of the statements Kovach had just made regarding her injuries and treatment. Hospital records showed that immediately after the 1994 accident, she had complained only of elbow pain; an x-ray was taken, and she was released. Dr. Lyons' records showed that when Kovach had arrived for treatment over a year before the 1994 accident, she had complained not only of neck pain, but also of every symptom she had just stated, on direct examination, was caused by the later accident. Dr. Lyons' records showed that in the three months immediately prior to the accident in question, she was treated by him, on average, once every three or four days, rather than once a month, as she had stated on direct.

¶ 21 In the presence of the jury, it became apparent during Kovach's cross-examination that her attorney did not have a copy of Dr. Lyons' records and claimed that he had not been provided them, although they were the records of his client's treating chiropractor. The only set in the courtroom was in the possession of Solomon's attorney, who shared it as needed. However, during re-direct of Kovach, her attorney requested permission to keep the one set of Dr. Lyons' records. Following resolution of this issue, Kovach's attorney asked to mark the records as a

plaintiff's exhibit. Solomon's attorney objected, stating that this was her only copy of the records of Kovach's treating physician, which her attorney should have had himself. Her objection was over-ruled and the exhibit was marked. After the jury was excused, admissibility of the medical records was discussed.[5] Kovach then rested.

¶ 22 Solomon testified briefly that he caused the accident; then the jury viewed the videotaped testimony of an orthopedic surgeon he had retained to examine Kovach and her records. This doctor opined that Kovach's degenerative disc disease was of long standing and was not traceable to the 1994 accident. He stated that if it was attributable to anything, it would be the 1990 accident.[6]

¶ 23 After closing arguments, the court charged the jury and asked for additional inclusions from counsel. In a sidebar conference, Solomon's counsel requested a "missing witness" adverse inference instruction on the grounds that she had not received timely notice that Dr. Lyons would not be called, as was required under the local rule. The court granted this request as an appropriate sanction within its discretion, and it commented during the sidebar conference:

> The practice in Northampton County is that the failure to comply with [the] Northampton County rule does result in

5. As the trial court relies in its 1925(a) opinion upon Dr. Lyons' records having been admitted into evidence, we have examined this aspect of the case in detail. Solomon's attorney objected to all of the medical records being admitted into evidence because some contained hearsay and expert medical opinion without all doctors being present. She had entered into no stipulation regarding admissibility of the records, although she did not contest their authenticity. Kovach's attorney stated that since he had not performed the pre-trial preparation, he did not know whether there had been a stipulation regarding the admissibility of the medical experts' records. Eventually, it was determined that the hospital records would not be admitted into evidence. The orthopedic surgeon's records were admitted on the basis of his testimony.

No ruling was made on the admissibility of the records of Dr. Lyons. Solomon's attorney did not object to the admission of the specific portions which had been the subject of her examination of Kovach, but she did object to the rest of them being entered. The court admitted the portions that had been the subject of cross-examination and re-direct, and determined to review the rest before ruling. The next day, however, Kovach's attorney withdrew his request to admit Dr. Lyons' records in their entirety.

6. Out of the hearing of the jury, the court admitted this expert's reports. It was also clarified that Solomon's attorney was not offering to move into evidence the chiropractic records of Dr. Lyons.

a negative-inference instruction. I'm going to give it for that reason, not because it's generally appropriate or because the witness was unavailable but because of the lack of compliance with the legal rule.

The court further specified it was giving the instruction because Solomon's counsel did not receive the appropriate notice under the rule. Therefore, it gave the following instruction:

Ladies and Gentlemen: There has been a reference to a chiropractor, Dr. Ross Lyons. He treated Mrs. Kovach for a period of time as described in the testimony.

He was not called by—as a witness by the plaintiffs in this case. You may, if you wish, draw the inference that the testimony of Dr. Lyons would have been unfavorable.

You are not required to draw that inference, however. You may find that there is some other basis for his not being called based on what you have seen and heard.

Shortly thereafter, and just before the jury was excused to deliberate, a juror posed the following question, and the court responded:

A JUROR: Would you repeat—could you repeat the last instruction you gave to us regarding Dr. Lyons?

THE COURT: Dr. Lyons—Dr. Ross Lyons is a chiropractor. He has been referred to in the testimony frequently over the past day or so. He treated the plaintiff Mrs. Kovach for the period of time that was described in the testimony.

He was not called as a witness. You may draw the inference that the testimony of Dr. Lyons would have been unfavorable. You may draw that inference from the failure to call him as a witness.

However, you are not required to draw that inference. You may, for other reasons, based on the record, based on what you have seen and heard, decide that there is some other explanation for the failure to call Dr. Lyons as a witness.

After asking if there were any other questions regarding its instructions and after giving a few more instructions as to any questions for the court that might arise during deliberations, the court excused the jury. After deliberating, the jury found that causation had not been proved and returned a verdict for Solomon.

¶ 24  Kovach filed motions for J.N.O.V. and a new trial. They included the argument that the missing witness charge to the jury had been inappropriate for a variety of reasons, including lack of prejudice to Solomon. In response, the court scheduled a hearing for April 8, 1998. At this hearing, exclusively regarding the adverse inference instruction and the local rule, the court inquired for the first time about what prejudice the violation of the rule might have caused Solomon. Solomon's counsel stated the prejudice was the inability to obtain "Dr. Lyons' diagnosis of the plaintiff regarding her injuries with regard to her first accident." It was also determined that although Solomon's attorney had received notice just before the start of trial that Dr. Lyons would not be called by Kovach, Solomon's attorney had not attempted to secure Dr. Lyons' attendance.

¶ 25  The trial court then granted a new trial. The court states in its Pa.R.A.P. 1925(a) opinion that it did so because Solomon did not suffer prejudice by not receiving the notice required by the local rule. The trial court explains that there was no offer of proof of Dr. Lyons' expert opinion, which is the prejudice Solomon's attorney had claimed he suffered. The court also states that, in any event, all of Dr. Lyons' records were admitted at trial, including any diagnosis he might have made.[7]

---

7.  Our review of the record convinces us that this statement is mistaken. We note that,  ultimately, neither party moved for the admission of all of Dr. Lyons' records.

¶ 26 The trial court reasons that it found the absence of prejudice determinative, even though neither the local rule nor the "missing witness" rule calls for a showing of prejudice, because the purpose behind the local rule is to prevent the "last-minute 'disappearance' of important witnesses," while here, there is no evidence that Solomon "was deprived of any material evidence at the time of trial." The trial court concludes that, in retrospect, the local rule was violated only technically. In the crux of its opinion, the trial court states:

Although the technical violation was apparent at the time of jury instruction, the lack of prejudice was not developed until later. Had the trial court known that the technical violation resulted in no prejudice to the Defendant, the supplemental instruction would not have been given. Therefore, the trial court abused its discretion by imposing a sanction without sufficient showing of prejudice.

Under these circumstances, drawing the attention of the jury to an adverse inference resulted in an unfair trial. The importance of the adverse inference instruction was emphasized by the jury's request that it be repeated. For that reason, we infer that the repeated supplemental charge may have been responsible for the jury's decision.

For the foregoing reason, we grant a new trial on all issues.

¶ 27 In order to determine whether the trial court erred in this decision to grant a new trial, we must determine how Northampton County Local Rule N212B(c)(5) affects the generally applicable "missing witness" rule. We preliminarily examine when it is proper to apply the general "missing witness" adverse inference rule, following which we examine whether the local rule changes the general "missing witness" rule.[8]

¶ 28 The general rule in Pennsylvania is that "[i]f a party fails to call a witness or other evidence within his or her control, the fact finder may be permitted to draw an adverse inference." Leonard Packel and Anne Poulin, *Pennsylvania Evidence* § 419 at 248, note 1 (West's Pennsylvania Practice 1987, pocket part 1997, 1998 New Rules Supplement). However, the witness (or evidence) must not be equally available to both parties, or the inference may not be drawn. *Bennett v. Sakel*, 555 Pa. 560, 725 A.2d 1195 (1999); *Bentivoglio v. Ralston*, 447 Pa. 24, 288 A.2d 745 (1972). This rule applies in both civil and criminal cases, as to both witnesses and other evidence, and when applied to witnesses it is often known as the "missing witness rule." *Pennsylvania Evidence, supra.*

¶ 29 The most succinct and precise statement of the rule we have found in the law of our Commonwealth is from a 1973 case in which our supreme court stated:

Generally, when a potential witness is **available to only one** of the parties to a trial, and it appears this witness has

8. For the moment, we set aside the discretionary standard for sanction articulated in the local rule, for the following reason. The courts of common pleas are empowered to adopt local rules in the interest of justice or the efficient administration of justice, but these must not conflict with the rules of our Supreme Court, statutory law, or case law. 42 Pa.C.S. § 323; *Bassett v. Bassett*, 543 Pa. 323, 325, 671 A.2d 661, 662 (1995). The local rule gives the trial court discretion as to an appropriate sanction, but such is not unfettered. Since the standard for the grant of a new trial is abuse of discretion, in order to find error, under the local rule, we would have to find that the trial court's finding that it had abused its discretion under the local rule (and thus that a new trial was warranted), was itself an abuse of discretion. This is circular and meaningless, but it does not, as Kovach would have it, negate the issue. In order to find whether the trial court abused its discretion, we must apply some other standard than "abuse of discretion." Therefore, we examine whether there would be error in giving the jury charge in the absence of the local rule. Then we may determine whether the local rule has any effect upon the general rule. The court's discretionary choice of sanction under the local rule must, in other words, be examined for conformity to general, and not just local, rules of law.

special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable. *Commonwealth v. Moore*, 453 Pa. 302, 305, 309 A.2d 569, 570 (emphasis added). *See also O'Rourke v. Rao*, 411 Pa.Super. 609, 602 A.2d 362 (1992);[9] Alan Stephens, *Annotation: Adverse Presumption or Inference Based on Party's Failure to Produce or Question Examining Doctor—Modern Cases*, 77 A.L.R.4th 463 at § 2[a]; *Pennsylvania Evidence, supra*, at §§ 419–419.3.

¶ 30 Applying these three requirements, we are able to dispose of one readily. It is clear that, as Kovach's primary treating physician for the injuries at issue, Dr. Lyons had material information of special relevance to the case.

¶ 31 The questions at trial based upon Dr. Lyons' records have already indicated that his testimony would probably not have been merely cumulative. As Kovach's primary treating physician for her back injuries over a number of years, his diagnoses of what injuries Kovach sustained in each accident would most likely differ from those offered by the medical experts retained specifically for trial by both Kovach and Solomon who had only examined her over relatively brief periods of time by comparison.

¶ 32 However, we may not so easily dispense with the third requirement, that the testimony would not merely be cumulative. By stating that there was no prejudice to Solomon, the trial court im-plied a conclusion regarding this requirement: that since Solomon already had used Lyons' records in questioning, to Kovach's detriment, then Dr. Lyons' live testimony would merely have been cumulative. If this is indeed what the trial court concluded, we respectfully disagree with its reasoning, for it calls for Solomon to offer proof he had no reason to prepare. The local rule does not require a showing of prejudice, nor of what was lost by the opponent's failure to call the witness. Nor do the general requirements of the "missing witness" rule we are here discussing, beyond that the testimony is not merely cumulative. The failure to call the witness leads to a negative inference against the one failing to call that witness, in and of itself; it does not require a showing on the part of the opponent that something was lost.

¶ 33 There is a fair indication on the record that Dr. Lyons' medical diagnoses and opinions would have been different than those of the two videotaped physicians. Without his presence, those diagnoses and opinions were not admissible evidence. *Walsh v. Kubiak*, 443 Pa.Super. 284, 661 A.2d 416 (1995). Therefore, the interpretation that they would merely have been cumulative is not one we accept.[10]

¶ 34 The third requirement, that Dr. Lyons must have been available only to one side (here, Kovach) is the issue upon which this case turns.

¶ 35 A mere several days ago, our supreme court handed down a case on this point, wherein it reiterated the requirement that the potential witness be avail-

---

9. McCormick, as quoted in *O'Rourke, supra*, states the rule more broadly. It should be noted that Pennsylvania does not accept the group of cases described therein in which the inference may be drawn where the witness is one "reasonably assumed to be favorably disposed to the party," although our cases have considered such as a factor, for those cases do not, while our law does, require lack of equal availability to the other side. *O'Rourke* at 363, *quoting McCormick on Evidence* § 272, 1987 pocket part (3d ed.1984).

10. However, we agree with the trial court that this was a case in which the issue of Dr. Lyons' absence was quite skillfully and obviously brought forth for the jury's consideration through the cross-examination of Kovach, using both Dr. Lyons' records and the apparent happenstance that Kovach's counsel did not have them. We do not think this alone, however, renders Dr. Lyons' professional diagnoses and/or opinions merely cumulative.

able to only one of the parties to a trial, initially stating:

> The issue before this Court is whether counsel, during closing argument, may properly encourage the jury to draw adverse inferences concerning witness not called by the opposing party, where the witnesses were equally available to both parties.

*Bennett v. Sakel*, 555 Pa. 560, 725 A.2d 1195 (1999). In that case, the attorney for the defense in a civil case had suggested in his closing argument that the plaintiffs' failure to call the investigating police officer should give rise to an inference that the officer's testimony would have been adverse to plaintiffs. *Id.* at ——, 725 A.2d at 1195. The trial court denied plaintiffs' motion for a mistrial or curative instruction, and this court affirmed. *Id.* at ——, 725 A.2d at 1195. The supreme court reversed, quoting *Bentivoglio v. Ralston*, 447 Pa. 24, 29, 288 A.2d 745, 748 (1972): "The inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties." In affirming, we had relied on *Augustine by Augustine v. Delgado*, 332 Pa.Super. 194, 481 A.2d 319 (1984), but, in reversing, our supreme court held that our reliance on that case had been inappropriate. In *Augustine*, there was no examination of availability of the missing witness— or, as our supreme court put it, "whether the physicians were peculiarly within the reach or control of the plaintiffs." *Bennett, supra*, at ——, 725 A.2d at 1196. Moreover, the supreme court clarified that there is no legal distinction between those cases in which the adverse inference is contained in a jury instruction, and those in which it was found in counsel's closing argument: *"Bentivoglio* is clear that it is the inference itself that is prohibited, whether it comes from opposing counsel or the court in its instructions." *Bennett, supra*, at ——, 725 A.2d at 1196. The court concluded:

> We therefore hold that an attorney may not ask the jury to draw an adverse

inference concerning the opposing party's failure to call a witness where that witness was equally available to both sides.

*Id.* at ——, 725 A.2d at 1196.

It is clear that the two standards are used interchangeably:

> [T]his rule is inapplicable if such witness is equally available to both sides of the litigation. In other words, the inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties.

*Bentivoglio, supra*, at 29, 288 A.2d at 748. In that case, because defendant had knowledge of the witnesses well in advance of trial, the court held that the uncalled witnesses were not "peculiarly within the knowledge and reach" of plaintiff. *Id.* at 30, 288 A.2d at 748.

¶ 36 However, in neither *Bennett, supra*, nor *Bentivoglio, supra*, was there any local rule such as the one at hand.

¶ 37 The narrow question in this case, then, is whether the local rule in Northampton County is relevant to whether a witness is "equally available" or "peculiarly within the knowledge and reach" of the party who had earlier stated he or she would call that witness. It is. Depending upon the specific circumstances of the case, this rule may well have the effect of making the initially listed but later uncalled witness unavailable to the opposing party, and it certainly makes such a witness less than **equally** available to the party relying upon the other party's witness list seven or fewer days before trial.

¶ 38 Because it mandates notice one week before trial, this local rule may indeed justify one party's reliance upon the other party's pre-trial witness list beginning one week before trial. This is so because under the rule, a plaintiff's witness list is valid not only as of the date it is issued, but is also re-verified, and becomes binding, as of one week before trial. If a witness is on it, there is no need for the

defendant to subpoena that witness himself or herself, even if he or she wishes that witness to appear. The one-week deadline of the rule is sensible, given this function; it allows the opposing party one week, upon receiving notice that an originally intended witness will not be called, to arrange for the testimony of that witness. This rule does have an effect on the equality of the availability of such a witness.

¶ 39 In the case before us, Solomon, through his attorney, justifiably relied upon the lack of pre-trial notice from Kovach's attorney. Moreover, upon specifically asking whether Kovach intended to call Dr. Lyons, Solomon's attorney received an uncertain response, based upon the change in counsel. We do not consider the ambiguous response to be notice under the local rule. Even if we did, it would have been untimely and thus a violation. In the absence of the local rule, such a response could well have triggered a duty for Solomon to subpoena Dr. Lyons himself. Since the local rule applied, however, we cannot impose such a duty. There was no duty for Solomon to subpoena Dr. Lyons on the day of an expectedly short trial after his attorney was told for the first time with any certainty that Kovach would not be calling Dr. Lyons to testify.

¶ 40 Further support for our conclusion that Dr. Lyons was not equally available to Solomon due to the local rule is found in the A.L.R. article referred to *supra*:

[T]he absent witness must have been "available" and within the "control" of the party against whom the inference is applied, factors that for practical purposes are largely interchangeable, and relate essentially to the party's superiority of access to the witness. Among the considerations frequently entertained in this regard are the witness' competence to testify, the existence of privilege preventing the witness from being compelled to testify, the party's ability to obtain the witness' presence in court or at a deposition by the exercise of reasonable diligence, the party's opportunity for advance knowledge of the substance of the witness' testimony, and the likelihood of bias on the witness' part. If the parties stand on an **equal** footing with regard to such factors, then the adverse inference is either not applicable, or else it applies against both parties.

\* \* \*

A party's failure to call a doctor who is **not** a personal physician and who did **not** render treatment for any extended period of time is less likely to raise an adverse inference than the failure to call a **doctor with whom the party has developed an ongoing relationship** .... ·

\* \* \*

[A] party is usually presumed to have superior access to **his or her own doctor** ....

When a doctor's records are introduced into evidence, it is a good idea to carefully consider whether the doctor should also be called to testify, since the failure to do so has led to an application of the missing witness inference in many cases, either on the ground that the records required some explanation or were incomplete, or due to suspicion engendered by the use of the records without providing the opponent an opportunity to cross-examine the doctor.

Alan Stephens, *Annotation: Adverse Presumption or Inference Based on Party's Failure to Produce or Question Examining Doctor—Modern Cases*, 77 A.L.R.4[th] 463 at §§ 2[a, b] (footnotes and parentheticals omitted) (emphasis added).

¶ 41 Applying these factors, we find the degree of reasonable diligence which was required to obtain Dr. Lyons' presence in court has specifically been changed by the local rule, as it justified Solomon's reliance on Kovach's pre-trial witness list including Dr. Lyons. As a consequence of the local rule, the parties did not stand on an equal footing with regard to his availability. Moreover, Dr. Lyons' long-stand-

ing treatment of Kovach and her testimony that he was her primary treating physician for these injuries, leads naturally to the conclusion that, in terms of availability, she had superior access to him.

¶ 42 Therefore, Dr. Lyons was not equally available to both sides. His testimony would not have been merely cumulative, and he alone possessed special information that was material to the issue of causation of Kovach's injuries. Thus, we find the instruction to the jury that they might draw an adverse inference from Kovach's failure to call him was appropriate under the "missing witness" rule as affected by the local rule.

¶ 43 Under the local rule's specific provisions, then, and as the trial court stated at the time, its jury instruction was an appropriate sanction for violation of the rule. It was not an abuse of discretion.

¶ 44 However, the trial court's later conclusion that it had abused its own discretion by giving the instruction was error. Since the trial court was mistaken in this, its single reason for granting a new trial, under the above standards, it abused its discretion when it granted a new trial.

¶ 45 Order for a new trial reversed. Original verdict reinstated.