**Vincent CLEMENTI and Maria Clementi, Appellees,**

v.

**Pasquale M. PROCACCI, M.D., and Cardiology Consultants of Philadelphia, P.C., Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 13, 2000.
Filed Oct. 13, 2000.
Reargument Denied Dec. 20, 2000.

William J. Mundy, Philadelphia, for Procacci, appellant.

Bernard W. Smalley, Philadelphia, for appellees.

BEFORE: DEL SOLE, HUDOCK and STEVENS, JJ.

STEVENS, J.

¶ 1 Appellants Pasquale M. Procacci, M.D., and Cardiology Consultants of Philadelphia, P.C., (collectively Appellants) [1] appeal from the order entered in the Court of Common Pleas of Philadelphia County granting a post-trial motion for a new trial filed by Appellee Marie Clementi, individually and as executrix of the estate of Vin-

---

1. Dr. Procacci was an employee of Cardiology    Consultants of Philadelphia, P.C.

cent Clementi, with regard to a medical malpractice action.[2] Appellants allege that the trial court erred in overturning the jury's verdict, which found Dr. Procacci's actions to be negligent but not a substantial factor in causing Vincent Clementi's injuries, and in ordering a new trial. Specifically, Appellants allege that (1) the trial court did not err in entering a compulsory non-suit, thereby terminating the Clementis' action regarding the increased risk of harm as it relates to Dr. Procacci's failure to administer anticoagulation drugs, (2) the trial court's jury instruction was proper or, in the alternative, any error in the jury instruction was harmless, and (3) the trial court improperly speculated as to the theory of liability, which was relied upon by the jury.[3] We affirm.

¶ 2 The relevant facts and procedural history are as follows: In or before 1983, Vincent Clementi became a patient of Dr. Procacci, a cardiologist, and, in May of 1990, Mr. Clementi was admitted to the Hahnemann University, where Dr. Procacci diagnosed Mr. Clementi with cardiomyopathy, ventricular arrhythmia,[4] and congestive heart failure. On December 29, 1990, Mr. Clementi underwent a coronary artery bypass grafting surgery, which was performed by Dr. Procacci, and, on June 17, 1993, Dr. Procacci obtained an echocardiogram[5] of Mr. Clementi's heart, which indicated left ventricular dysfunction with a possible blood clot.

¶ 3 On January 15, 1995, while on vacation in Puerto Rico, Mrs. Clementi witnessed Mr. Clementi as he experienced a sudden onset of right-sided paralysis and speech difficulty. Mr. Clementi was initially treated at the San Pablo Hospital, and he was later air-lifted to the Hahne-

mann University, where, remaining under the care of Dr. Procacci, Mr. Clementi was diagnosed as suffering from a stroke. On January 25, 1995, Mr. Clementi was discharged from the Hahnemann University and admitted into the Magee Rehabilitation Hospital, where his paralysis and speech difficulty persisted.

¶ 4 On November 2, 1995, the Clementis filed a civil complaint against Dr. Procacci alleging that he was negligent in, *inter alia*, failing to recognize Mr. Clementi's risk of stroke, failing to administer an anticoagulation drug, and in failing to perform necessary tests.[6] The Clementis specifically alleged that Dr. Procacci's omissions increased the risk of Mr. Clementi's stroke. Moreover, the Clementis alleged that Cardiology Consultants of Philadelphia, P.C., were negligent in substantially the same manner as Dr. Procacci. Appellants filed an answer and new matter, and discovery commenced.

¶ 5 During the course of discovery, the Clementis produced the expert report of Robert Friedlander, M.D., who indicated that he had reviewed various physicians' and hospitals' records and concluded that the echocardiogram administered in 1993 indicated a possible blood clot. Based on this, Dr. Friedlander presented three theories of liability: (1) Dr. Procacci deviated from the acceptable standard of care, thereby causing the stroke, in failing to administer anticoagulation medications in 1993 for Mr. Clementi's left ventricular dysfunction, (2) Dr. Procacci deviated from the acceptable standard of care, thereby increasing the risk of stroke, in failing to administer anticoagulation medications in 1993 for Mr. Clementi's left ventricular

---

**2.** Mr. Clementi was alive when the complaint at issue was filed; however, he died on April 27, 1998, before this matter proceeded to trial. His wife was appointed executrix of his estate. We note that Mr. Clementi's death is unrelated to the action at issue.

**3.** We have renumbered and combined Appellants' issues for effective appellate review.

**4.** "Ventricular arrhythmia" refers to premature ventricular contractions.

**5.** An "echocardiogram" is a test which uses high-frequency sound waves to image the heart.

**6.** Mrs. Clementi alleged loss of consortium due to her husband's injuries.

dysfunction, and (3) Dr. Procacci deviated from the acceptable standard of care, thereby causing the stroke, in failing to perform a transesophogeal echocardiogram in 1993 to determine if a blood clot was present.

¶ 6 Various pre-trial motions were pursued by the Clementis and Appellants, including Appellants' motion *in limine* seeking to exclude Dr. Friedlander's testimony regarding the failure to use anticoagulants in 1993. Prior to the jury trial, the trial court heard argument concerning this motion, during which time Appellants contended that Dr. Friedlander's conclusion that Dr. Procacci's failure to administer an anticoagulant fell below the acceptable standard of care is not accepted by the scientific community, and, therefore, under *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), as adopted by the Pennsylvania Supreme Court in *Commonwealth v. Topa*, 471 Pa. 223, 369 A.2d 1277 (1977), Dr. Friedlander's opinion on the matter was inadmissible. N.T. 4/19/99 at 29–43. The trial court decided not to rule on the motion immediately and opening statements to the jury trial commenced. Following opening statements, the jury left the courtroom, and the trial court held a hearing regarding the *Frye* motion. Appellants' counsel questioned Dr. Friedlander, after which the trial court denied Appellants' motion. N.T. 4/19/99 at 142.

¶ 7 The jury returned to the courtroom, and Dr. Friedlander testified extensively about his two theories of negligence. Specifically, Dr. Friedlander opined that Dr. Procacci deviated from the acceptable standard of care in failing to administer anticoagulation drugs to Mr. Clementi, and that Dr. Procacci's failure to do so caused or increased the likelihood of Mr. Clementi's stroke from a blood clot, resulting in paralysis and speech difficulty. N.T. 4/19/99 at 206–207. He also opined that when Dr. Procacci did the echocardiogram in 1993, and noted that a possible blood clot existed, Dr. Procacci should have performed a transesophogeal echocardiogram

to confirm whether a blood clot existed. N.T. 4/19/99 at 207–214.

¶ 8 After presenting the expert testimony of Dr. Friedlander, the Clementis presented additional witnesses. At the close of the Clementis' case-in-chief, Appellants moved for a compulsory non-suit, alleging that the Clementis failed to meet their burden of production on the issue of whether Dr. Procacci's failure to administer anticoagulation drugs increased the risk that Mr. Clementi would suffer a stroke. N.T. 4/21/99 at 59–60. Specifically, Appellants argued that the Clementis failed to offer scientific evidence supporting Dr. Friedlander's opinion that Dr. Procacci deviated from the acceptable standard of care in failing to administer an anticoagulation drug. However, after making its initial argument, Appellants engaged in the following colloquy with the trial court:

> **THE COURT:** Okay. Now, is it my understanding that, [defense counsel], on behalf of your clients, you're not making the motion for nonsuit on the issue of whether or not the failure to give the Coumadin was a deviation of the standard of care? You're not making the motion on whether or not the failure to give the Coumadin caused the injuries, **but rather you are making your motion for nonsuit that Dr. Friedlander did not identify the increased risk of harm.**
>
> **DEFENSE COUNSEL:** Yes, Your Honor. It's the standard of care [that] is going to be a fact issue for the jury at this point, because they're going to hear it from both sides. With regards to the causation issue, I certainly take exception to that testimony, but that issue will proceed on with, certainly evidence on our side. But it's the other problem, the increased risk of harm, as Your Honor just stated, that is the real problem.
>
> **THE COURT:** Okay. I just wanted to get a clarification.
>
> All right. This is my ruling. The defense motion, as it relates to increased

risk of harm specifically, and limited to that, is granted. We heard, in Dr. Friedlander's testimony, because the earlier motions were before the testimony, but now there's no question, that the failure to give Coumadin was a deviation from the standard of care.

Dr. Friedlander stated unequivocally that from 1990 through December, 1994, which was the month before the stroke, Mr. Clementi should have been anticoagulated with Coumadin, and the failure to do so, caused the 1995 stroke. That's what [defense counsel] calls the fact issue .... That's the direct examination, I didn't go through the cross. But, so there's no question that's what the issue is for this jury to decide. The increased risk of harm is not in the case.

**DEFENSE COUNSEL:** Your Honor, could I just clarify that? So, the issue before the jury then is obvious standard of care, causation, and damages, but the increased risk of harm is out.

**THE COURT:** That's exactly right. Based on what you represented to me was the basis of your nonsuit motion, that's exactly right.

N.T. 4/21/99 at 69–71 (emphasis added). The Clementis took exception to the court's ruling, and the jury trial proceeded.

¶ 9 Following deliberations, the jury returned a verdict sheet indicating that Appellants were negligent, but that their negligence was not a substantial factor in bringing about Mr. Clementi's stroke. The Clementis filed post-trial motions seeking JNOV or, in the alternative, a new trial, alleging, *inter alia*, that the trial court erred in granting a partial compulsory non-suit on the issue of increased risk of harm and in charging the jury.

■ ¶ 10 Following oral argument on the matter, on February 9, 2000, the trial court granted the Clementis' request for a new trial indicating that the trial court committed errors of law which controlled the outcome of the case. Specifically, the trial court determined that it erred in granting Appellants' motion for a compulsory non-suit and that it erred in charging the jury. Appellants filed a timely notice of appeal, the trial court ordered Appellants to file a concise statement pursuant to Pa.R.A.P.1925(b), and Appellants so complied.

When reviewing an order granting a new trial, a matter within the discretion of the trial court, we are called upon initially to determine whether the trial court would have ordered a new trial for any other reason but the one cited. If the trial court would have granted a new trial for reasons other than those it cited, a broad scope of review applies. In that situation, we examine the entire record, and, using an abuse of discretion standard, we must affirm if there is any valid reason in the record for granting a new trial.

However, where, as here, it is apparent that the reason given by the trial court is the only basis upon which it ordered a new trial, a narrower scope of review applies. In such a case, using an abuse of discretion standard, we examine only the stated reason the trial court ordered the new trial. Thus, if the trial court specifies the reasons for which it ordered a new trial, then an appellate court can only affirm the decision if at least one of the reasons specified is an adequate one.'

*Kovach v. Solomon*, 732 A.2d 1, 3 (Pa.Super.1999) (citations and quotation omitted).

■ ¶ 11 Here, the trial court has given two bases upon which it ordered a new trial.

As a practical matter, a trial court's reference to a finite set of reasons is generally treated as conclusive proof that it would not have ordered a new trial on any other basis. We treat it as such. [However,] [e]ven when an appellate court must confine its examination to the merit of any reasons offered by the trial court, circumstances may still demand a review of the entire record. However, the purpose for doing so is not

to locate a valid reason for affirming the order. The inquiry is strictly directed at determining whether the trial court's stated reasons and factual basis can be supported.

*Id.* at 4 (citations, quotations, and quotation marks omitted).

¶ 12 The trial court's first reason for ordering a new trial was based on its belief that the court improperly entered a compulsory non-suit in this case. Specifically, the trial court indicated that it granted a compulsory non-suit because it believed Dr. Friedlander failed to testify to a reasonable degree of medical certainty, thereby failing to establish causation, with regard to the increased risk of harm from the failure to administer anticoagulation drugs. Trial Court Opinion dated 2/9/2000 at 10–12. However, upon review and in consideration of the Clementis' post-trial motions, the trial court determined that Dr. Friedlander did, in fact, testify to a reasonable degree of medical certainty that Dr. Procacci's failure to administer an anticoagulation drug increased the likelihood Mr. Clementi would suffer a stroke, and that Dr. Friedlander did, in fact, adequately explain the basis of his opinion. The trial court further noted that:

> [T]he post-trial memoranda of the parties appear to re-examine the defendant's *Frye* challenge, which after a hearing, was denied by the Court. *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923). Dr. Procacci, however, did not file a cross-motion pursuant to Rule 227.1(c) to preserve his *Frye* challenge in the event the plaintiffs new trial motions were granted.

Trial Court Opinion dated 2/9/2000 at 11.

¶ 13 On appeal, Appellants do not contest the trial court's conclusion that Dr. Friedlander testified to a reasonable degree of medical certainty regarding the failure to administer an anticoagulation drug and the resulting increased likelihood of stroke, and, therefore, Appellants do not contest that the Clementis proved a *prima facie* case regarding causation. However,

Appellants aver that the Clementis failed to provide an adequate scientific basis indicating that Dr. Friedlander's opinion is adopted by the medical community, thereby failing to prove that Dr. Procacci deviated from the acceptable medical standards. Appellants disagree that they are attempting to relitigate their *Frye* motion, and, therefore, they aver that their failure to file a Pa.R.C.P. 227.1(c) motion does not mandate the reversal of the compulsory non-suit. Rather, they contend that, even in the absence of a *Frye* motion, a physician must support his/her opinions with a scientific basis in order to show that the defendant deviated from the acceptable medical standards, and, since Dr. Friedlander failed to do so, compulsory non-suit was properly granted.

■ ¶ 14 Assuming, *arguendo*, that Appellants are correct in asserting that a physician must support his/her opinions with a scientific basis in order to show that the defendant physician deviated from the acceptable medical standards (standard of care), we conclude that was not the basis for the trial court's entry of the non-suit or grant of a new trial in this case. In determining the compulsory non-suit issue, the trial court indicated that it was granting the compulsory non-suit because it believed Dr. Friedlander failed to explain how the failure to give an anticoagulation drug increased the risk of a stroke. N.T. 4/21/99 at 69. The trial court specifically stated that Dr. Friedlander's testimony established that Dr. Procacci deviated from the acceptable standard of care, which was the subject of earlier motions. N.T. 4/21/99 at 71. Appellants' counsel indicated that he agreed with the trial court and that compulsory non-suit was properly granted on this basis. N.T. 4/21/99 at 71.

■ ¶ 15 Appellants cannot now claim that compulsory non-suit should have been granted on the basis initially argued to the trial court, since it is clear that they agreed with the trial court that non-suit should be granted on a different basis,

and, in fact, stated that they agreed that Dr. Friedlander had sufficiently established the standard of care issue. Since Appellants do not contest that Dr. Friedlander stated with a reasonable degree of medical certainty that the failure to administer anticoagulation drugs increased the risk of stroke, and he identified how the risk was created, we conclude that the trial court properly granted a new trial recognizing that the trial court had improperly granted compulsory non-suit on the causation issue.[7] *See Kovach, supra* (holding that where the trial court gives a specific reason for ordering a new trial, an appellate court must examine only the stated reason).

¶ 16 The trial court's second reason for granting a new trial was its belief that it erred in instructing the jury regarding the increased risk of harm issue and that such error was not harmless. Specifically, the trial court concluded that it erred when it omitted the following sentence from Pennsylvania Suggested Jury Instruction 10:03B: "A causal connection between the injury suffered and the Defendants' failure to exercise reasonable care may be proved by evidence that the risk of incurring those injuries was increased by the Defendants' negligent conduct." [8]

¶ 17 On appeal, Appellants contend that the trial court properly granted Appellants' motion for compulsory non-suit on the issue of increased risk of harm, and,

therefore, since it was no longer an issue in the case, the trial court properly deleted the sentence referring thereto. As such, Appellants' aver, a new trial should not have been granted on this ground.

■ ¶ 18 In light of our discussion *supra*, that the trial court properly granted a new trial regarding the entry of the compulsory non-suit, Appellants' argument is meritless on this basis. However, this does not end our inquiry, as Appellants further contend that, even if the entry of compulsory non-suit was improper, the jury instruction as a whole indicated that a causal connection could be found if there was an increased risk of harm. That is, Appellants contend that the trial court's omission of one sentence was, at most, harmless since the jury instruction as a whole explained causation.

■ ¶ 19 It is well settled that "[a]n inadequate jury instruction may amount to reversible error if it has a tendency to mislead the jury or if it omits material, which is basic and fundamental." *McClintock v. Works*, 716 A.2d 1262, 1264 (Pa.Super.1998) (citation omitted). Although a trial court need not use the specific language requested by a party, its words must sufficiently and fully convey the rules of law applicable to the case. *See Gravlin v. Fredavid Builders & Developers*, 450 Pa.Super. 655, 677 A.2d 1235 (1996).

---

7. We note that we have reviewed the testimony at issue and we agree that Dr. Friedlander stated to a reasonable degree of medical certainty that Dr. Procacci's failure to administer an anticoagulation drug increased the likelihood of a stroke. Specifically, Dr. Friedlander testified that Mr. Clementi's stroke was caused by a blood clot originating in the heart, N.T. 4/19/99 at 207, that a blood thinning drug should have been administered in this case, N.T. 4/19/99 at 231, and that, in his opinion to a reasonable degree of medical certainty, the failure to administer the blood thinning drug increased the likelihood that Mr. Clementi would suffer a stroke. N.T. 4/19/99 at 227–228. This was sufficient for the Clementis to establish causation and permit the issue to be submitted to the jury on this basis. *See Mitzelfelt v. Kamrin*, 526 Pa.

54, 584 A.2d 888 (1990) (holding that where a plaintiff is unable to show that the physician's actions caused the resulting harm, but is able to show, to a reasonable degree of medical certainty, that the physician's actions increased the risk of harm, the question of whether the actions caused the ultimate injury should be submitted to the jury); *Wolloch v. Aiken*, 756 A.2d 5 (Pa.Super.2000) (holding that in "increased likelihood of harm" cases, the expert is permitted to testify to a relaxed degree of certainty as enunciated in Section 323(a) of the Restatement (Second) of Torts).

8. The Clementis specifically objected to the omission of the language from Instruction 10:03B. N.T. 4/23/99 at 111–112.

¶ 20 Here, we have reviewed the entire charge given to the jury, and we conclude that the trial court failed to inform the jury, in any manner, that a causal connection between Dr. Procacci's omissions and Mr. Clementi's stroke could be established if Dr. Procacci's omissions increased the risk of the stroke. In fact, in its charge, the trial court repeatedly noted that the jury was required to find that "[i]f the injuries in question would have been sustained even if the physician had not been negligent, then the negligent conduct of the defendant physician would not be a substantial factor in causing the injuries in question." N.T. 4/23/99 at 122. Case law establishes that there is a distinction between cases where the negligence **increased** the risk of harm and those cases where the injury would not have occurred but for the negligence. *See Mitzelfelt v. Kamrin*, 526 Pa. 54, 584 A.2d 888 (1990); *Montgomery v. South Philadelphia Medical Group, Inc.*, 441 Pa.Super. 146, 656 A.2d 1385 (1995). Since the trial court failed to charge the jury regarding causation and the increased likelihood of harm, we conclude that the trial court properly ordered a new trial.

¶ 21 Finally, Appellants contend that the trial court improperly speculated that the jury found Dr. Procacci's negligence not to be a substantial factor in causing Mr. Clementi's stroke because of the errors regarding the increased risk of harm theory. Appellants contend that the Clementis should have either requested special interrogatories to determine on which theory of liability the jury was basing its verdict or objected to the verdict sheet presented to the jury. To support this contention, Appellants rely on *Birth Center v. The St. Paul Companies, Inc.*, 727 A.2d 1144 (Pa.Super.1999), *appeal granted on other grounds*, 560 Pa. 633, 747 A.2d 858 (2000).

¶ 22 In *Birth Center*, the cross-appellant argued that the jury's award of damages was too speculative. A panel of this Court declined to disturb the jury's award of damages and noted the following:

> In *Henery v. Shadle*, 443 Pa.Super. 331, 661 A.2d 439 (1995), this Court emphasized the usefulness of special interrogatories in this modern era of complex litigation. Routine interrogatories on jury slips can oversimplify the verdict, whereas special interrogatories enable the jury to focus and resolve issues in an orderly manner as the jury moves to a final verdict. [In *Birth Center*, the cross-appellant] did not request special interrogatories and the jury verdict slip provides only for a lump sum award. Of course, the decision to submit special interrogatories to the jury is left to the discretion of the trial court. By failing to request a more structured verdict slip, [the cross-appellant] did not inform the trial court or the jury, at a time when it could easily have been corrected, that [cross-appellant] was interested in partitioning or apportioning the award for later challenge. Although not waiver in a technical sense, the absence of special interrogatories has thwarted our review of [the damages] issue.

*Birth Center*, 727 A.2d at 1163 n. 16 (citations omitted).

¶ 23 We conclude that *Birth Center* is inapposite to the case *sub judice*. Here, the trial court specifically ruled that the Clementis' theory of liability based on the increased risk of harm was not to be considered by the jury when it granted Appellants' motion for compulsory non-suit, and the trial court did not charge the jury with regard thereto. The Clementis' specifically objected to the court's rulings in this regard and filed post-trial motions. As such, we conclude that the issues were properly preserved for appeal. We note that, since the trial court terminated the Clementis' claims regarding the increased risk of harm prior to the submission of the case to the jury, we would not expect the Clementis to have sought to add the claim to the jury's verdict slip.

¶ 24 For all of the foregoing reasons, we affirm the trial court's order granting the Clementis' motion for a new trial.

¶ 25 Affirmed.