**Cruz v. Northeastern Hospital**

*Anne E. Pedersen,* for plaintiffs.

*Edward C. Mintzer Jr.,* for defendant Northeastern Hospital.

*Kevin H. Wright,* for defendant Shin.

TEMIN, *J.*, June 11, 2001—

## FACTS AND PROCEDURAL HISTORY

This is a medical malpractice action filed by the parents of Adam Omar Cruz on behalf of themselves and Adam, a minor, against Northeastern Hospital, Dr. Myung Hyo Shin M.D., and Dr. Robert L. Cogan M.D., both of whom specialize in obstetrics and gynecology. Plaintiff, Jacqueline Nieves Cruz sought care from Dr. Shin and Dr. Cogan at Northeastern Hospital in January of 1992. On August 11, 1992, Ms. Cruz went to the emergency room at Northeastern Hospital because she had been experiencing some contractions. She was examined and released on that day. On the morning of August 12, 1992, Ms. Cruz again went to the emergency room at Northeastern Hospital because she was leaking fluid and was experiencing contractions, but was again released. Late on August 12, 1992, she again appeared at the emergency room of Northeastern Hospital complaining of fluid leakage and mild contractions and was admitted. Her fluid leak was found at that time to be positive for amniotic fluid. Shortly after her admission she was placed on a fetal heart monitor. On the morning of August 13, 1992, Ms. Cruz was placed on Pitocin by Dr. Cogan. Later in the day Dr. Cogan discontinued the Pitocin and told Ms. Cruz to ambulate the hospital floor. In the evening of August 13, 1992, Ms. Cruz was given a sedative and told to rest overnight. At 6 a.m. there was a spontaneous rupture of the membranes with clear amniotic fluid. Pitocin was restarted at 9 a.m. along with intravenous sedation. At 3 p.m. it was noted that Ms. Cruz had a tem-

perature of 102.1 degrees, but Dr. Shin elected to treat this after delivery. At 7:13 p.m. the baby was born by spontaneous vaginal delivery. At birth Adam required resuscitation and a foul smelling liquid was noted, as was a cephalhematoma. The following morning Adam was transferred to St. Christopher's Children's Hospital because of suspected seizure activity.

At the time of trial Adam was being given medication to treat his seizures, but was occasionally suffering break-through seizures. He is developmentally delayed both physically and cognitively and at last testing had a full scale IQ of 52, which is in the mild to moderate intellectually deficient range.

The case was tried by this court and a jury which returned a verdict in favor of plaintiff and against Northeastern Hospital in the amount $10,811,431 on August 3, 2000. The jury found in favor of Dr. Cogan and Dr. Shin. The claims by Jacqueline Nieves Cruz and Oscar Cruz in their own right were withdrawn prior to the case being sent to the jury.

Plaintiffs filed a motion for delay damages on August 10, 2000, requesting the verdict be molded to reflect delay damages in the amount of $5,386,255.06 for a total verdict of $16,197,686.33. Defendant filed a response, plaintiffs filed a reply and defendant filed a supplemental answer to plaintiffs' reply. On December 18, 2000 this court entered an order for delay damages in the amount of $4,368,899.38 and molded the verdict to a total verdict in the amount of $15,180,330.65. Post verdict motions were subsequently denied. This appeal followed.

## THE POST VERDICT MOTIONS

Northeastern argues that it is entitled to judgment n.o.v. because:

(1) The court erred in admitting the expert testimony by Warren E. Cohen M.D. as to the cause of Adam's brain injury and;

(2) The court erred in admitting the testimony of Dr. Michael Goodman as to standard of nursing care.

Northeastern argues that it is entitled to a new trial because:

(1) The court erred in its charge on the spoliation of evidence;

(2) The court erred in permitting the jury to view enlarged medical records during deliberations;

(3) The court erred in instructing the jury on increased risk of harm;

(4) The court erred in not giving an adverse inference charge as to Marie Rosato;

(5) The court erred in permitting an inconsistent verdict to stand;

(6) The court erred in not admitting evidence of a criminal conviction of plaintiffs' expert, Michael C. Goodman;

(7) The court erred in not permitting recross-examination;

(8) The court erred in permitting the testimony of Dr. Brown, Dr. Cohen, Dr. Koffler and Dr. Buchanan.

(9) The court erred in refusing to grant a continuance because the Republican Convention was being held in Philadelphia during the trial;

(10) The court erred in overruling defendant's objection to plaintiffs' rebuttal argument;

(11) There was insufficient evidence to support the verdict; and

(12) The award of compensatory damages was gross and excessive.

In her post-trial motions plaintiff argues that she is entitled to judgment n.o.v. with respect to Cogan and Shin.

## JUDGMENT N.O.V.

### 1. *Expert Testimony of Dr. Cohen*

This court did not err in permitting plaintiffs' expert, Dr. Warren Cohen, to present expert testimony as to causation. The admission or exclusion of evidence, including the admission of testimony from an expert witness, is within the sound discretion of the trial court and will only be reversed upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Miller v. Brass Rail Tavern Inc.,* 541 Pa. 474, 664 A.2d 525 (1995); *Bindschusz v. Phillips,* 771 A.2d 803 (Pa. Super. 2000); *McClain ex rel. Thomas v. Welker,* 761 A.2d 155 (Pa. Super. 2000). The Pennsylvania Supreme Court has repeatedly held that the standard for evaluating the qualifications of an expert witness under Pennsylvania law is a liberal one:

"The test to be applied when qualifying an expert witness is whether the witness has *any* reasonable preten-

sion to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine." *Miller v. Brass Rail Tavern, supra,* at 480-81, 664 A.2d at 528 (emphasis in original); *Bindschusz v. Phillips, supra.*

The record here shows that Cohen is a graduate of Jefferson Medical College in Philadelphia, trained in pediatrics at Albert Einstein Medical College in New York and Montefiore Hospital Medical Center in New York in pediatrics and child neurology, served as a consultant for pediatric neurology problems for patients hospitalized at the NIH and completed a full program of training in genetics at NIH. Further, Cohen is certified by the American Board of Pediatrics, American Board of Psychiatry and Neurology with a special certification in child neurology and by the American Board of Medical Geneticists. Dr. Cohen was qualified to testify as an expert in pediatric neurology.

Cohen testified that Adam's neurological disorder was related to the brain injury sustained around the time of birth and that there were several occurrences each of which contributed to the damage to Adam's brain—asphyxia, sepsis, acidosis and hemorrhage in the brain which caused thousands of cells in Adam's brain to die. Dr. Cohen's report, which is based on a complete examination of the medical records, fully supports the conclusion he reached in his testimony, that the cause of Adam's neurological problems was hypoxic-ischemic brain injury.

With respect to this causation testimony, defendant cannot seriously argue that there is no support for the

statement that hypoxic-ischemic brain injury can be a cause of the type of neurological problems from which Adam suffers. Dr. Leonard J. Grazoni, defendant Northeastern Hospital's pediatric neurology expert, acknowledged in his testimony that hypoxic-ischemic brain injury can cause neurological impairment, but presented his opinion that in this case the hypoxic-ischemic brain injury was not sufficiently severe to produce Adam's symptoms.

Judgment n.o.v. can be entered only if the movant is entitled to judgment as a matter of law or if evidence is such that no two reasonable minds could disagree that the verdict was improper. A trial court's denial of a motion for judgment n.o.v. will be reversed only when there is an abuse of discretion or an error of law that controlled the outcome of the case. *B & L Asphalt Industries Inc. v. Fusco,* 753 A.2d 264 (Pa. Super. 2000); *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa. Super. 1999). The standard to be used here is whether, even with all factual inferences decided adversely to the movant, the law nonetheless requires a verdict in its favor. *Whittington v. Episcopal Hospital,* 2001 WL 114942 (Pa. Super.); *Robinson v. Upole,* 750 A.2d 339 (Pa. Super. 2000).

### 2. *Testimony of Dr. Goodman*

It was not error to permit Dr. Goodman to discuss and address nursing standards of care. In the instant case, the negligent care at issue is the failure of the nursing staff to properly monitor the plaintiff and the fetal heartbeat during labor. The evidence establishes that Dr. Goodman graduated from the Georgetown University school of

medicine, that he did a four-year residency in obstetrics and gynecology, that he is board certified in obstetrics and gynecology, that he is chairman of the department of obstetrics and gynecology at Laurel Hospital in Maryland, that he has developed protocols for obstetric physicians and nursing personnel and that he has had substantial experience in reading fetal monitoring strips. The doctor's testimony concerned the medical reasons that this monitoring was necessary and established the causal nexus between the nurses' failure to monitor and report the baby's distress to the doctors and the harm done to him. Dr. Goodman has sufficient expertise to testify concerning the duty of the nursing staff to monitor the baby and to report the distress of the child to the doctors.

The testimony of both Dr. Cohen and Dr. Goodman was properly admitted, there is no error of law and Northeastern is not entitled to judgment n.o.v. on this basis.

## MOTION FOR A NEW TRIAL

### 1. *Jury Charge on Spoliation*

Under Pennsylvania law, a party cannot benefit from its own withholding or spoliation of evidence. *Schroeder v. PennDOT,* 551 Pa. 243, 710 A.2d 23 (1998); *Duquesne Light Company v. Woodland Hills School District,* 700 A.2d 1038 (Pa. Commw. 1997). The doctrine of spoliation permits a jury to infer that the "spoiled" evidence would have been unfavorable to the position of the spoliator. *Duquesne Light Company v. Woodland Hills School District, supra.* Accordingly, where evidence has been destroyed, referral of the spoliation issue to a

jury with accompanying instructions is the proper and advisable course of action. In *Schroeder v. PennDOT, supra,* the Pennsylvania Supreme Court approved the use of an adverse inference jury instruction in cases where a party has either spoliated or destroyed evidence which is material to the outcome of the litigation. The court used a three-prong test to determine whether a jury should be given instructions on the spoliation inference: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

The record shows that Cruz was admitted to the hospital in the evening of August 13, 1992, at which time Dr. Shin administered Pitocin and ordered that she be placed on a fetal monitor. Dr. Shin testified that he intended that the monitoring continue until Pitocin was no longer being administered to Cruz. At 7 p.m., Cruz was moved to the delivery room and Pitocin was stopped. Plaintiffs requested a spoliation charge on the ground that some of the fetal monitoring strips for the time period between 5 p.m. and 7 p.m., when Cruz was brought to the delivery room, were either altered or destroyed. A review of the fetal monitoring strips reveals that there are only two panel numbers between the hours of 5 p.m. and 6 p.m. when the monitor had previously been running at a rate of nine panel numbers per hour. If the monitor continued to run at the same rate of speed as it had during the hours before 5 p.m., then the strip actually

ends at 5:45 p.m. One could conclude from this information that someone either altered the strips or destroyed some of the strips which monitored the baby's heartbeat between the hours of 5:45 and 7 p.m.

Further, the fetal monitoring strips were material evidence to the plaintiffs because the fetal monitoring strips for the hours in question, constituted crucial evidence concerning the stress caused to the baby by allowing Cruz's labor to continue in a case where the plaintiffs charged that the brain damage to the child was the result of the delay in his delivery.

The issue of spoliation was properly submitted to the jury and Northeastern is not entitled to a new trial on this basis.

## 2. *Jury's View of Enlarged Exhibits*

There is no basis in law for defendant's claim that the court erred in permitting the jury to view enlarged copies of the plaintiffs' exhibits in response to jury questions during the course of deliberations. Pursuant to Rule of Civil Procedure 223.1(c)(3), the court may make exhibits available to the jury during its deliberations. 42 Pa.C.S., Rule 223.1. The jury here asked to see the fetal monitoring slips, Dr. Cogan's addendum note, the labor progress report, the emergency room notes from August 12, and nurses' notes from August 13 and 14. These enlarged exhibits were placed upright on the benches in the courtroom and the jury was brought into the courtroom and permitted to view them. All of these enlarged exhibits, had been introduced at trial without objection from defense counsel. Accordingly, there is no basis for

objecting to the jury's view of them at their request during deliberations.

### 3. *Charge on Increased Risk of Harm*

Defendant's contention that the court erred in charging on increased risk of harm because plaintiffs' expert testimony was not sufficient to justify the instruction is without merit. The theory of the case was that the defendants failed to properly monitor Ms. Cruz's labor, unduly prolonged it and thereby increased the risk that the fetus would suffer harm. The evidence here showed that labor was prolonged, that the fetal monitor indicated the baby was in distress for some time before Ms. Cruz was taken to the delivery room, that there was a gap in the fetal monitoring, and that the baby suffered hypoxic-ischemic brain injury during labor.

It is well settled that "[a]n inadequate jury instruction may amount to reversible error if it has a tendency to mislead the jury or if it omits material, which is basic and fundamental." *Clementi v. Procacci,* 762 A.2d 1086, 1092 (Pa. Super. 2000); *McClintock v. Works,* 716 A.2d 1262, 1264 (Pa. Super. 1998). Although a trial court need not use the specific language requested by a party, its words must sufficiently and fully convey the rules of law applicable to the case. *Clementi v. Procacci, supra.* In determining whether to reverse a jury verdict due to an erroneous jury charge, this court must look at the jury charge as a whole. *Thomas v. E.B. Jermyn Lodge No. 2,* 693 A.2d 974 (Pa. Super. 1997); *Chanthavong v. Tran,* 452 Pa. Super. 378, 682 A.2d 334 (1996).

Here the court charged the jury, using the standard charge, as follows:

"The medical professional is legally responsible or liable for the injuries suffered by his or her patient if the defendant's negligent conduct is a legal cause of those injuries.

"In order for the negligent conduct to be a legal cause, that conduct must have been a substantial factor in bringing about the injuries in question.

"If the injuries in question would have been sustained even if the medical professional had not been negligent, then the negligent conduct of the medical professional would not be a substantial factor in causing the injuries in question.

"Stated differently, the negligent conduct of a medical professional is a substantial factor in causing the patient's injuries if those injuries would not have been sustained had the medical professional not acted in a negligent manner.

"When a medical professional negligently fails to act, or negligently delays in employing indicated diagnostic or therapeutic measures, and his or her negligence is a substantial contributing factor in causing injuries to the patient, the plaintiff patient does not have to prove to a certainty that proper care would have, as a medical fact, prevented the injuries in question.

"If a medical professional's negligent action or inaction has effectively terminated the patient's chances of avoiding injuries, the medical professional may not raise conjectures as to the measure of the chances that he or she has put beyond the possibility of realization. If there was any substantial possibility of avoiding injuries and

the medical professional defendant has destroyed that possibility, he or she is liable to the plaintiff.

"A causal connection between the injuries suffered and the medical professional defendant's failure to exercise reasonable care may be proved by evidence that the risk of incurring those injuries was increased by the medical professional's negligent conduct. The law recognizes that it is rarely possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass."

The charge given by this court was warranted by the evidence and correctly conveyed the rules of law applicable to these circumstances.

### 4. *Adverse Inference Charge As to Mrs. Rosato*

When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable. *Bennett v. Sakel,* 555 Pa. 560, 725 A.2d 1195 (1999); *Commonwealth v. Moore,* 453 Pa. 302, 309 A.2d 569 (1973); *Kovach v. Solomon,* 732 A.2d 1 (Pa. Super. 1999). While Maria Rosato was arguably in control of the plaintiffs, the information which she possessed, concerning what occurred in the delivery room was not material to this case. The contention here was that the injury to plaintiff occurred during Ms. Cruz's prolonged labor before she was taken to the delivery room and did not occur

during delivery. Defendant was not entitled to an adverse inference charge with respect to this witness.

### 5. *Inconsistent Verdict*

It is well established law in Pennsylvania that there is a presumption of consistency with respect to a jury's findings which can only be defeated when there is no reasonable theory to support the jury's verdict. *Fillmore v. Hill,* 445 Pa. Super. 324, 665 A.2d 514 (1995); *Giovanetti v. Johns-Manville Corp.,* 372 Pa. Super. 431, 539 A.2d 871 (1988). In the instant case there was evidence that the plaintiff's injury was caused by the failure of Northeastern's nursing staff to follow the instructions of the doctors and to properly monitor the plaintiff during a prolonged period of labor. Thus, it was not unreasonable for the jury to find that Shin and Cogan were not responsible for the injury suffered by plaintiff because it was the nurses' failure to follow the doctors' instructions and to properly monitor the plaintiff that caused the injury. The verdict was not inconsistent and Northeastern is not entitled to a new trial on this basis.

### 6. *Conviction of Dr. Goodman*

Dr. Goodman was convicted of falsifying hospital records in Virginia during the time he was in medical school. This conviction had no relevance to Dr. Goodman's qualifications as an expert. Further, the evidence shows that it was more than 10 years old at the time of this trial and had been expunged. Accordingly, Dr. Goodman had no criminal conviction and none could be admitted.

### 7. *Court's Refusal to Permit Recross-Examination*

Defendant next argues that the court erred in not permitting recross-examination and claims that this is a "violation" of Pennsylvania Rule of Evidence 611. Pursuant to Pennsylvania Rule of Evidence 611:

"The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time and (3) protect witnesses from harassment or undue embarrassment."

The scope and manner of cross-examination are within the trial court's discretion, and that discretion will not be disturbed absent its abuse or an error of law. *Collins v. Cooper,* 746 A.2d 615 (Pa. Super. 2000); *Commonwealth v. Wilson,* 538 Pa. 485, 506, 649 A.2d 435, 445 (1994).

Specifically, defendant claims that he was prejudiced by not being permitted to recross-examine Dr. Goodman when "new medical issues"—fetal jeopardy, late deceleration entries, electronic fetal monitoring, acidosis and the 24-hour timing of delivery—were raised during redirect examination. The record shows, however, that counsel did, in fact, question Dr. Goodman concerning all these issues during cross-examination. Here the court's ruling avoided needless repetition and the defendant suffered no prejudice as a result. Defendant is not entitled to a new trial on this basis.

### 8. *Testimony of Dr. Brown, Dr. Cohen, Dr. Koffler and Dr. Buchanan*

It was not error to permit Dr. Brown, Dr. Cohen, Dr. Koffler and Dr. Buchanan to testify at trial in spite of an

alleged discovery violation by the plaintiff in supplying their supplemental reports to the defense just prior to jury selection. The decision to sanction a party for a discovery violation is a matter vested in the discretion of the trial court. *Wolloch v. Aiken,* 756 A.2d 5 (Pa. Super. 2000); *Croydon Plastics Co. v. Lower Bucks Cooling & Heating,* 698 A.2d 625 (Pa. Super. 1997), *appeal denied,* 553 Pa. 689, 717 A.2d 1028 (1998). Rule 4003.5 governs the disclosure of an expert's facts and opinions otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial. If the identity of an expert witness is not disclosed, Rule 4003.5(b) authorizes sanctions, such as preclusion of the proposed expert's testimony. 42 Pa.C.S., Rule 4003.5. In *Feingold v. SEPTA,* 512 Pa. 567, 517 A.2d 1270 (1986) the Pennsylvania Supreme Court specifically abandoned the concept of mandatory preclusion in this context, holding that Rule 4003.5 requires the trial court to balance carefully the facts and circumstances of the case to determine the prejudice to each party caused by the discovery violation. The multi-factor approach espoused in *Feingold, supra* at 574, 517 A.2d at 1273, involves several basic considerations: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling [undisclosed] witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith [or] willfulness in failing to comply with the court's order."

In the case at bar the record shows that all of the reports were merely updates of the reports prepared for

the original trial date which was in 1994 and contained no material not already known to the defense. Accordingly, Northeast was neither surprised nor prejudiced by receiving these reports two days before jury selection and is not entitled to a new trial on this basis.

### 9. Court's Refusal To Grant Continuance

Northeastern's claim that the court erred in refusing to grant a continuance because the plaintiffs' four supplemental expert reports were supplied on the eve of trial is without merit for the reasons set forth in the previous paragraph. Further, there was no need to grant a continuance because of the fact that the Republican Convention was being held in Philadelphia during the week of the trial. On the one or two occasions during which testimony could not be heard because of demonstrations outside the courtroom window, court was recessed until the noise subsided. The allegations as to the limitations of the jury pool, the "constant interruptions" of the trial, the "disruption" of the trial by demonstrations outside City Hall and the "distractions" of the jury have no basis in fact and will not be further discussed.

### 10. Objection to Plaintiffs' Rebuttal Argument

This court did not err in overruling Northeastern's objection to plaintiffs' closing rebuttal argument in which she said:

"Mr. Mintzer came up here and told you about all the things that were going on or he believes [were going on] once that tracing stops here. And he listed thing[s]. Please search your memories because at the time he started list-

ing all these things that he thought was [sic] happening during that time period there is not one person who testified to that from the witness stand. Not one, who said, well, here's what happened during that time. I work at Northeastern and here's what I'm doing during that time. Nobody said that to you. Mr. Mintzer said that to you, but he didn't bring anybody here. He said this case was important to Northeastern Hospital."

This was a proper response to defense counsel's attempt to explain the fact that there was no fetal monitoring between 5:45 and 7 p.m. by speculating that plaintiff was being prepped for delivery during that time. Plaintiffs' counsel was correct in reminding the jury that there was no such evidence on the record. Defendant's objection to this rebuttal argument was properly overruled and he is not entitled to a new trial on this basis.

## 11. *Sufficiency of the Evidence*

When reviewing a jury's verdict, the court must view the evidence in the light most favorable to the verdict winner. *Boutte v. Seitchik,* 719 A.2d 319 (Pa. Super. 1998). A new trial is warranted only where the jury's verdict is so contrary to the evidence as to shock one's sense of justice and should not be granted because of a mere conflict in testimony. *Hixson v. Barlow,* 723 A.2d 716 (Pa. Super. 1999). Viewing the evidence in the case at bar in the light most favorable to the verdict winner, it is clear that it was sufficient to sustain the verdict. The record in the instant case discloses that the verdict is sustained by the weight of the evidence. Therefore, Northeastern's request for a new trial on this ground is without merit.

## 12. *Damages*

Judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant. The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption. *Haines v. Raven Arms* 536 Pa. 452, 640 A.2d 367 (1994); *Carminati v. Philadelphia Transportation Co.,* 405 Pa. 500, 509, 176 A.2d 440, 445 (1962).

The evidence here demonstrates that Adam will never be able to obtain a high school diploma, will never be able to care for himself and will not be able to live independently. Plaintiffs' life care expert, Lorraine Buchanan R.N., testified that the lifetime cost of caring for Adam is $5,679,924.50. Plaintiffs' vocational expert, Dr. Mark Lukas, testified that Adam is unemployable. Dr. Brian B. Sullivan, plaintiffs' forensic economist, testified that lost lifetime earnings for Adam amount to between $1,513,410 and $3,083,775. Thus, there was substantial evidence to support the jury's award of $10,811,431. The jury's verdict was fair and reasonable and Northeastern is not entitled to either reduction of the damage award or to a new trial on this basis.

The defendant's post verdict motion was properly denied.

## PLAINTIFFS' CROSS-MOTION

In her post-trial motions plaintiff argues that she is entitled to judgment n.o.v. with respect to Cogan and

Shin because the verdict in favor of Shin and Cogan is inconsistent with the verdict against Northeastern. It is well established law in Pennsylvania that there is a presumption of consistency with respect to a jury's findings which can only be defeated when there is no reasonable theory to support the jury's verdict. *Fillmore v. Hill,* 445 Pa. Super. 324, 665 A.2d 514 (1995); *Giovanetti v. Johns-Manville Corp.,* 372 Pa. Super. 431, 539 A.2d 871 (1988). In the instant case there was evidence that the plaintiff's injury was caused by the failure of Northeastern's nursing staff to follow the instructions of the doctors and to properly monitor the plaintiff during a prolonged period of labor. Thus, it was not unreasonable for the jury to find that Shin and Cogan were not responsible for the injury suffered by plaintiff because it was the nurses' failure to follow the doctors' instructions and to properly monitor the plaintiff that caused the injury. The verdict was not inconsistent and plaintiffs are not entitled to judgment n.o.v. on this basis.

Plaintiffs' post verdict motion was properly denied.