J-A24033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RHONDA L. SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JODIE NGUYEN A/K/A JODINE | : | No. 1312 EDA 2022 |
| NGUYEN | : | |

Appeal from the Judgment Entered May 16, 2022
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-48-CV-2018-04127

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED MARCH 28, 2023**

Rhonda Smith ("Smith") appeals from the judgment entered after the trial court denied her motion for a new trial on damages after a jury found Jodie Nguyen ("Nguyen") negligent in a rear-end collision with Smith's car but found that Nguyen's negligence did not cause harm to Smith.  We affirm.

In May 2016, Nguyen struck Smith's car at low speed, which Smith said pushed her car forward approximately one foot ("the collision").  **See** N.T., 3/8/21, at 24.  Nguyen admitted the collision was her fault.  **See id**. at 91, 98.  Smith had pre-existing, degenerative injuries, and herniation of her neck, and left arm and knee injuries from prior accidents.  **See** N.T., 3/8/22, at 20-24; N.T., 2/22/22, at 64.[1]

_____

[1] Smith filed suit against Nguyen in May 2018.

Smith testified that she felt some neck pain when the collision occurred but drove her passenger to the hospital and did not seek treatment. *See* N.T., 3/8/22, at 54. Smith testified that a few weeks later, she felt weakness in her leg and Dr. Vito Loguidice ("the orthopedic surgeon"), who had treated her for a previous accident, ordered an X-ray and MRI of the lumbar region of her spine, resulting in a short course of physical therapy ("PT") for her back. *See id*. at 28. After a cortisone shot, Smith by her own account felt almost pain-free. *See id*. at 30. The orthopedic surgeon prescribed additional PT, which Smith later stopped because she said it caused tingling and numbness in her arm. *See id*. at 31-32. Smith testified that she gradually developed pain from the collision, beginning about one-and-one-half years after it occurred. *See id*. at 45. She testified that at orthopedic appointments in 2018 and 2019, she mentioned neck pain but attributed the pain to stress. *See id*. at 58-59, 62-63; *see also* N.T., 2/22/22, at 62-63.

Smith testified that more than four years after the collision she woke up one morning with weakness in her hand and arm, and later had an MRI of her neck and shoulders. *See* N.T., 3/8/22, at 32-33. Dr. Christopher Wagener ("the spine surgeon") operated on Smith to remove discs and reduce pressure on her spinal column. *See id*. at 35, N.T. 2/22/22, at 28-29.[2] At the time of trial, Smith said that she could drive without neck problems but had physical

---

[2] The citations to N.T. 2/22/22 refer to Dr. Wagener's prerecorded testimony that was played at trial.

limitations. *See id*. at 38-44. The spine surgeon testified that the collision worsened Smith's pre-existing degenerative neck and back problems and caused the injuries for which he performed surgery, and that additional surgery would be required in the future. *See* N.T., 2/22/22, at 34-35, 39-40, 43, 50. The orthopedic surgeon later opined that Smith's lumbar degeneration would continue and require future lumbar spinal fusion. *See* N.T. 3/7/22, at 37-38.

Varsha Desai, a nurse and life-care planner ("the life-care planner") testified about Smith's past- and anticipated future- treatment costs and stated that she made her cost calculations in reliance on the opinions in both the orthopedic and spine surgeons' written statements. *See* N.T., 3/7/22, at 53-60. Over Smith's objection, on cross-examination Nguyen asked the life-care planner a question about her awareness of the non-testifying orthopedic surgeon's statement in his report that the collision caused 25% of Smith's current symptoms. The life-care planner testified that she did not rely on that statement. *See id*. at 61-64.

The parties introduced their doctors' prerecorded expert testimony. When Nguyen showed the recording of the testimony of Dr. Brooks, her causation expert, it did not display the exhibits Dr. Brooks was discussing. *See* N.T., 3/8/22, at 68-69. The court stopped the recording twice, the first time to ensure there were no disputes over Dr. Brooks's qualifications. *See id*. The court stopped the recording a second time to ask Nguyen's counsel

why Dr. Brooks's testimony addressed exhibits not displayed on the recording. *See id*. at 69.[3] The playing of the recording resumed. Smith did not object until the jury had seen all of Dr. Brooks's direct and cross-examination testimony. Smith then moved to strike the testimony. *See id*. at 69-72.

In closing argument, Nguyen drew the jury's attention to the fact that Dr. Amit Malhotra ("the radiologist"), who prepared a report analyzing Smith's MRIs, had not testified, despite testimony from Smith's expert and Smith's closing argument about the radiologist's expertise. The trial court overruled Smith's objection to the remark. *See id*. at 128-29.

The jury found that Nguyen's negligence did not cause injury to Smith. Smith filed post-trial motions seeking a new trial. The trial court denied the motions and entered judgment. Smith appealed, and she and the trial court substantially complied with Pa.R.A.P. 1925.[4]

On appeal, Smith presents the following issues for our review:

1.  Did the [t]rial [c]ourt err in failing to grant a new trial where it committed a prejudicial error of law and/or abuse of discretion by admitting over objection the prejudicial hearsay causation opinion of a non-testifying physician . . . which prejudiced [Smith] on the key issue of causation calling into doubt the testimony of [Smith's] expert on causation []?

_____

[3] The videographer could not explain the problem or offer a solution. *See* N.T., 3/8/22, at 71.

[4] In lieu of writing a full 1925(b) Opinion, the trial court issued a Statement pursuant to Rule 1925, referring this Court to its 5/11/22 Opinion and Order denying Smith's post-verdict motions. *See* Trial Court's Statement, 5/24/22. Accordingly in this memorandum we refer to the Trial Court's 5/11/22 Opinion.

2. Did the [t]rial [c]ourt err in failing to grant a new trial where it committed a prejudicial error of law and/or abuse of discretion by failing to grant [Smith's] Motion to Strike the [t]estimony of [Nguyen's e]xpert . . . with curative instruction . . . due to the failure of technology to preserve the entire trial testimony including demonstrative illustrative evidence, for which failure [Nguyen] is responsible, especially where it inhibited [Smith's] cross-examination?

3. Did the [t]rial [c]ourt err in failing to grant a new trial since it committed a prejudicial error of law and/or abuse of discretion by overruling [Smith's] objection to [Nguyen's] closing argument [c]oncerning suggesting an adverse inference for [Smith's] [f]ailure to [call] [the radiologist] to testify concerning his findings on the MRIs, where the witness was equally available to be called by both sides?

4. Did the [t]rial [c]ourt err by failing to grant a new trial because the jury's finding of no causation of "any harm" was against the weight of the evidence?

*See* Smith's Brief at 3-4.

In her first issue, Smith asserts that the trial court abused its discretion by declining to grant a new trial after admitting evidence of the orthopedic surgeon's opinion about how much injury the collision caused.

In reviewing the denial of a motion for a new trial, this Court determines whether the trial court clearly and palpably abused its discretion or committed an error of law affecting the outcome of the case. *See Rohe v. Vinson*, 158 A.3d 88, 95 (Pa. Super. 2016). Although a non-testifying doctor's expert opinion is not admissible as substantive evidence, it may be used to impeach the credibility of an expert witness. *See Boucher v. Pennsylvania Hosp*., 831 A.2d 623, 629 (Pa. Super. 2003). A new trial is appropriate only where

the jury verdict may have been based on improperly-admitted evidence. **See Whyte v. Robinson**, 617 A.2d 380, 382 (Pa. Super. 1992).

Smith claims the trial court erred by allowing Nguyen to ask the life-care planner, whose expert testimony Smith offered on costs of care, not the cause, of her past and future treatment, if she had considered the non-testifying orthopedic surgeon's opinion that the collision caused only 25% of Smith's injuries, an estimate contained in the orthopedic surgeon's report but not the life-care planner's report. **See** N.T., 3/7/22, at 60-61. The life-care planner testified that she had not considered that opinion. **See id**. at 61-64. Smith argues that the question improperly acquainted the jury with an opinion that undermined the spine surgeon's testimony that the collision substantially exacerbated Smith's pre-existing injuries and caused her surgery.

The trial court noted that the life-care planner relied on the orthopedic surgeon's report in assessing the cost of Smith's future medical treatments, and repeatedly referred to that doctor's opinions in rendering her opinions regarding the costs of Smith's treatment. **See** Trial Court Opinion, 5/11/22, at 2-3; N.T., 3/7/22, at 39, 49, 61-63. The court concluded that Nguyen properly sought to impeach the life-care planner's credibility with the orthopedic surgeon's statement about the percentage of Smith's injuries the collision caused. **See** Trial Court Opinion, 5/11/22, at 2-4. The trial court also stated that even if it had erred in permitting the question, Smith did not suffer prejudice from the question because the jury found that the collision

- 6 -

did not cause **any** injury to Smith. **See id**. at 5, citing **Harman v. Borah**, 756 A.2d 1116, 1122 (Pa. 2000) (stating that the harmless error doctrine underlines every decision to grant a new trial and the moving party must demonstrate to the trial court that she has suffered prejudice from the alleged error).

The trial court properly denied a new trial. The life-care planner's report, which Smith introduced at trial, estimated the combined costs of a cervical spine surgery the spine surgeon performed **and** a lumbar spine surgery the orthopedic surgeon recommended. **See id**. at 49, 57.[5] Although the orthopedic surgeon's report stated that the collision did not cause the majority of Smith's injuries, the life-care planner's report, which Smith offered as evidence of damages, tabulated the full **combined** costs of treatment both doctors recommended, without regard to the portion of the injury attributable to Smith's prior accidents.[6] The jury was required to assess the cost of past and future treatment attributable to the collision. The challenged question elicited a difference between Smith's two doctors' views of the cause of Smith's injuries, which had formed the basis of the life-care planner's cost

---

[5] The life-care planner's report noted that orthopedic surgeon opined that Smith had "preexisting severe lumbar facet arthropathy, degenerative disc disease, and grade 1 degenerative spondylolisthesis" that the collision exacerbated, **see** N.T., 3/7/22, at 61; Smith's Trial Exhibit 6 at 5-6.

[6] Dr. Brooks, Nguyen's expert, testified that there was no evidence that the collision caused injury to Smith. **See** N.T., 3/1/22, at 14-27.

estimates. Had the trial court precluded the challenged question, the jury might have found that the collision caused **all** of Smith's injuries and awarded damages on that basis, without focusing on the fact that one of Smith's doctors had expressed an opinion which supported a smaller award of damages. The trial court thus did not err in permitting the question about the non-testifying orthopedic surgeon's opinion to impeach the life-care planner's testimony. **See Boucher**, 831 A.2d at 629-30.

Additionally, the record contains a clear basis for concluding that even if the trial court had erred in allowing the question, the error was harmless. The life-care planner denied having considered the orthopedic surgeon's statement about causation. Moreover, the jury found that Nguyen was not liable for any of Smith's injuries. Clearly the jury's finding that Nguyen did not cause **any** injury to Smith demonstrates that it did not credit either doctor's opinion about the cause of Smith's injuries. The finding of no liability demonstrates, to the contrary, that the jury rejected both expert doctors' estimates about the percentage of Smith's injuries attributable to the collision. Had the jury credited the orthopedic surgeon's testimony but discounted it by 75% based on the challenged question as Smith's claim suggests, they would have awarded a lesser amount of damages than the orthopedic surgeon estimated. Instead, the jury awarded no damages, manifesting their belief that Nguyen had not injured Smith. Thus, Smith cannot show that the

challenged question caused her prejudice, and the trial court did not abuse its discretion by denying a new trial. **See Harman**, 756 A.2d at 1122.

In her next issue, Smith asserts that the trial court should have granted a new trial after denying her motion to strike Dr. Brooks's prerecorded deposition testimony because a defect in the recording prevented the jury from seeing the MRIs and x-rays Dr. Brooks discussed, and impaired Smith's right to cross-examination.

The trial court found that Smith had not timely objected to the recording, that the motion to strike lacked merit because the lack of visual exhibits did not render Dr. Brooks's testimony "useless," and Smith failed to prove prejudice from the denial of her motion to strike. **See** Trial Court Opinion, 5/11/22, at 6-7.

We discern no basis to reverse the trial court's denial of a new trial. As a preliminary matter, we note the untimeliness of Smith's objection to the admission of the evidence she now claims the court should have been stricken. Under Pa.R.E. 103(a)(1)(A), a party may claim that a court erred in admitting evidence if she makes a timely objection, motion to strike, or motion *in limine,* but the rule requires a timely objection. **See Dilliplaine v. Lehigh Valley Trust Co.**, 322 A.2d 114, 116-17 (Pa. 1974). Smith waited under **after** the jury heard Dr. Brooks's direct- and cross-examination to object. **See** N.T., 3/8/22, at 68-71. She thereby deprived the court of the opportunity to exclude allegedly improper evidence before the jury heard it.

Smith also failed to preserve the theory she presents on appeal for striking Doctor Brooks's testimony: the impairment of her right to cross-examination. At trial, Smith asserted only that Dr. Brooks's testimony was "difficult and confusing . . . for the jury to follow." **See** N.T., 3/8/22, at 71. A party may not seek relief on different grounds than those she advances below, even if the issue is of constitutional dimension. **See PCS Chadaga v. Torres**, 252 A.3d 1154, 1158 (Pa. Super. 2021).[7]

Smith's claim that the trial court abused its discretion by failing to strike Dr. Brooks's "useless" testimony also fails on its merits. Smith did not focus her recorded cross-examination of Dr. Brooks on the display of the 2016 X-ray and MRI, which Dr. Brooks testified showed that she suffered from degenerative wear-and-tear injuries, not acute trauma. **See** N.T., 3/1/22, at 15-26.[8] Smith instead cross-examined Dr. Brooks about the radiologist's **interpretation** of the MRI, which differed from Dr. Brooks's. Smith did not confront Dr. Brooks by directing his attention to the MRI itself, and Dr. Brooks does not appear to have directed the jury's attention to the MRI in answering

---

[7] Smith's assertion that Nguyen was at fault for the absence of exhibits on the recording because Nguyen retained the videographer is irrelevant to Smith's failure to raise a timely, specific objection.

[8] The citations to Dr. Brooks's testimony are to the date he gave his prerecorded trial testimony, which was played to the jury at N.T., 3/7/22, at 68-71.

Smith's questions. *See id*. at 33-46.[9]  Further, although Smith showed Dr. Brooks a 2019 MRI, an MRI report, and an x-ray the orthopedic surgeon ordered, *see id*. at 46-47, the focus of Smith's questions was *what the report said, not what the physical MRI and x-ray showed*, and Smith confronted Dr. Brooks with the radiologist's contrary opinion. *See id*. at 47-51.  Only briefly on redirect did Dr. Brooks refer to the imaging itself. *See id*. at 54-56.  Thus, a review of the challenged testimony supports the trial court's finding that it was difficult but not impossible for the jury to follow Dr. Brooks's testimony. *See* N.T. 3/8/22, 72; Trial Court Opinion, 5/11/22, at 7.  Even without the exhibits, the jury perceived the differences between the experts' opinions.  The absence of the physical exhibits, though at least in part the product of Nguyen's counsel's oversight, did not deny Smith the right to cross-examination.  The trial court thus did not abuse its discretion in declining to grant a new trial. *See Harman*, 756 A.2d at 1122.

In her third issue, Smith asserts that the trial court abused its discretion by denying a mistrial when Nguyen asserted that the jury should draw an adverse inference against Smith for failure to call the radiologist whom either party could have called.

---

[9] Smith did briefly question Dr. Brooks about a 2009 MRI which she displayed that showed degenerative changes but no disc herniation. *See* N.T., 3/1/22, at 29-30.

A party may not ask a jury to draw an adverse inference concerning the failure to call a witness equally available to both parties. *See Bennett v. Sakel*, 725 A.2d 1195, 1196 (Pa. 1999). When reviewing objectionable remarks made in closing argument, a court considers the remarks in the context of opposing counsel's closing argument, not in isolation. *See Alexander v. Carlisle Corp.*, 674 A.2d 268, 271 (Pa. Super. 1996). The trial court will not order a new trial based on remarks neither inflammatory nor prejudicial. *See id*. Courts will grant a new trial in response to an attorney's improper argument only when the unavoidable effect of the conduct or language was to prejudice the factfinder and destroy its ability to return a fair verdict. *See Commonwealth v. Ali*, 10 A.2d 282, 307 (Pa. 2010).

The trial court found that in her closing argument Smith had bolstered the testimony of her trial expert and undermined Nguyen's expert, Dr. Brooks, using the opinion of the non-testifying radiologist. Smith argued that:

> when Dr. Brooks looked at the lumbar MRI, his review of that was rather cursory. A very short report compared to the report of the actual radiologist who was charged with caring for the patient, [the radiologist], who, according, to [the spine surgeon] is a superstar locally in doing these interpretations.

Trial Court Opinion, 5/11/22, at 8, quoting N.T., 3/8/22, at 110. Moreover, Smith then displayed the radiologist's report and stated, "I just want you to look at how long this report is . . . . It's very detailed. . . . I mean this is a very comprehensive report, which completely outshines what Dr. Brooks did." *See* Trial Court Opinion, 5/11/22, at 8, quoting N.T., 3/8/22, at 111-13. In

that context, the trial court found that Nguyen's statements in closing argument that "there was a lot of talk about what Dr. Malhotra said," and "[w]e haven't heard from Dr. Malhotra in this case" fairly responded to the evidence and Smith's closing argument, and simply asked the jury not to rely on the opinions of a non-testifying doctor. **See** Trial Court Opinion, 5/11/22, at 8-9.

The trial court properly exercised its discretion when it found that Nguyen's remark concerning the radiologist did not compel the grant of a mistrial. Smith made extensive use of the radiologist's report and asserted his credibility and excellence through the testimony of a witness and in argument. In her opening statement, Smith referenced "the radiologist [],who [the spine surgeon] describes in his deposition as a superstar when it comes to interpreting, you know, MRIs." **See** N.T., 3/7/22, at 8. Moments later, Smith again referenced the radiologist: "The radiologist, you'll see, he tells you precisely what films or what pictures to look at." **See id**. at 9. Further, Smith elicited testimony from the spine surgeon that, "I have always relied on [the radiologist] for his expertise, especially when it comes to neuroradiology. I mean, he's excellent. He's – honestly a superstar." **See** N.T., 2/2/22, at 51. **See also id**. at 52-57 (spine surgeon testifies that the radiologist believed in 2016 that Smith had disc pathology, swelling and other injuries, and that spine surgeon believed the radiologist's assessment). Smith also discussed the radiologist in closing argument. First, Smith repeated the

spine surgeon's description of him as "a superstar locally in doing these interpretations." ***See*** N.T., 3/8/22, at 110. Smith also contrasted the brevity of Dr. Brooks's report with the very detailed nature of the radiologist's report, which she had introduced as an exhibit through cross-examination of Dr. Brooks. ***See id***. at 110-13 (also referring to the radiologist's "comprehensive exam" and his "comprehensive report that outshines what Dr. Brooks did"). Despite the fact that the radiologist did not testify, Smith highlighted his evaluation and made it a central matter in the case. In context, Nguyen's statement in closing argument about the radiologist's absence was a fair response to the attack on Dr. Brooks's credibility, and was not requesting the jury draw an adverse inference because Smith did not call him as a witness. Further, when Smith objected to the statement that the jury had not heard from the radiologist, Nguyen made no further reference to him. In context, Nguyen's argument is properly viewed as an attempt to rebut an attack on Dr. Brooks's credibility rather than a request for an adverse inference instruction. The trial court did not abuse its discretion.[10]

---

[10] ***Bennett***, which Smith cites, is inapposite. In that case, Bennett did not call the police officer who investigated the collision that was the subject of a suit, or the two physicians who had treated her. Defense counsel explicitly faulted Bennett for not calling those witnesses, stating, "I wonder why [the Bennetts] did not call the trooper in their case. . . I wonder why Dr. Sterns wasn't here to talk to you. . . . . I wonder why [a treating physician] wasn't here to talk to you, especially when his records indicated that there wasn't to be any return visit. Those are questions that you, when you go back to the jury deliberation room, will ask yourselves why. Mr. and Mrs. Bennett have
*(Footnote Continued Next Page)*

In her final issue, Smith asserts that the trial court erred by failing to grant a new trial because the jury's finding of no causation of harm was against the weight of the evidence. Smith argues that Dr. Brooks did not dispute that she suffered injury as a result of the collision. She says that Dr. Brooks did not address the neck injury because he reviewed only back films, did not examine Smith, and admitted that Smith might have had subjective complaints of pain. Further, Smith argues that the spine surgeon gave uncontroverted testimony about her neck injuries.

A new trial will only be granted on weight grounds where the trial court abused its discretion by failing to find that the verdict is so contrary to the evidence that it shocks one's sense of justice. *See Adkins v. Johnson & Johnson*, 231 A.3d 960, 964-65 (Pa. Super. 2020). A jury may choose to believe all, part, or none of a witness's testimony, a decision that is solely in its province. *See Randt v. Abex Corp*., 671 A.2d 228, 234 (Pa. Super. 1996). Whether an injury is compensable is a jury question. *See Davis v. Mullen*, 773 A.2d 764, 769 (Pa. 2001).

The trial court rejected Smith's weight claim. It recognized that the jury *could* have concluded that Nguyen's negligence caused Smith harm, but that

---

promised to you to bring the information here, to bring the evidence here for you to consider. And you wonder, where are they?" *See Bennett*, 725 A.2d at 1195. Here, Nguyen's fleeting remark did not argue the deficiency of Smith's case due to the absence of the radiologist's testimony.

having weighed all of the evidence, it chose not to make that finding, and reached an appropriate verdict. *See* Trial Court Opinion, 5/11/22, at 10.

The trial court did not abuse its discretion. The spine surgeon testified that the collision caused Smith's neck surgery four years later, regardless of Smith's prior disc, neck, and back problems. Dr. Brooks testified, in contrast, that Smith's 2016 lumbar x-ray and MRIs showed degenerative and "wear and tear" conditions that predated the collision, and no signs of acute trauma from the collision. *See* N.T., 3/1/22, at 10, 16-17, 21-25. Dr. Brooks also testified that he did not see changes in Smith's neck and back in her 2019 MRI, *see id*. at 26, and that he disagreed with the radiologist's assessment of Smith's 2016 MRI. *See id*. at 35-41. When Smith's counsel asked Dr. Brooks, "So, in review, briefly, we have a radiologist and two orthopedic surgeons looking at those MRIs, come up with different conclusions than you do, correct?" Dr. Brooks answered, "Yes." *See id*. at 52. The jury was charged with determining, based on the evidence, whether the collision caused compensable injury. *See Davis*, 773 A.2d at 769.

That Dr. Brooks did not dispute Smith's *subjective* reports of pain resulting from the collision, *see* Smith's Brief at 73-74, does not constitute Dr. Brooks's agreement that the collision caused injury.[11] The jury's finding

_____

[11] Smith cites *Ferrara v. Russella*, 2015 WL 6159557 (Pa. Super. 2015), a non-citable, unpublished memorandum that is in any event distinguishable because Nguyen did not concede that the collision caused injury.
*(Footnote Continued Next Page)*

- 16 -

that Nguyen's negligence did not cause harm to Smith could properly have been premised on evidence that the collision occurred at relatively low speed, that Smith had pre-existing neck and back injuries and degenerative conditions (as spine surgeon himself stated), and/or that Smith did not complain of neck pain until four years after the collision. Both expert testimony and non-expert support the jury's finding. The jury was free to accept all, some, or none of any witness's testimony in coining to its result. Smith has not shown the trial court abused its discretion in finding that the verdict did not shock its conscience. *See Adkins*, 231 A.3d at 965. Accordingly, this claim lacks merit.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2023

---

Because Nguyen did **not** concede that the collision injured Smith, the holding of **Majczyk v. Oesch**, 789 A.2d 717, 722 (Pa. (Super. 2001), that where a defendant concedes liability and injury a defense verdict is against the weight of the evidence, is also inapposite.